FORD MOTOR COMPANY *v.* Robert L. REID et ux

5-5287                                                    465 S. W. 2d 80

Opinion delivered March 15, 1971
[Rehearing denied April 26, 1971.]

*Wright, Lindsey & Jennings,* for appellant.

*Lightle & Tedder* and *Sandy S. McMath,* for appellees.

CONLEY BYRD, Justice. Appellees Robert L. Reid and Billie Marie Reid, his wife, on April 26, 1967, purchased through W. H. Capps, d/b/a Capps Motor Company, a 1967 Lincoln Continental automobile manufactured by the appellant, Ford Motor Company. Approximately 1,800 miles later, on May 29, 1967, the automobile caught fire while parked in the garage attached to the Reid residence. Within ten minutes from the time the fire was first observed in the electrical harness under the right front seat of the automobile, it spread to and engulfed the residence in flames, resulting in total destruction of the automobile and the residence. The Reids brought this action against both W. H. Capps and Ford Motor Company alleging that the wiring under the front seat was defective in violation of the basic warranty on said automobile and that the damages sustained by them in the fire were proximately caused by the defect in the automobile. The first trial resulted in a directed verdict for Capps and a hung jury on the liability of Ford Motor Company. Upon retrial against Ford Motor Company, the jury returned a verdict for $89,279.00 for which judgment was entered. For reversal Ford Motor Company contends that the directed verdict in favor of Capps exonerated Ford Motor Company and that the court erred in giving its Instructions No. 6 and No. 7.

The testimony presented clearly made a fact issue as to whether there was a defect in the wiring harness that worked the solenoid for the reclining back of the right front seat and the motor which operated the head rest. The express warranty that came with the vehicle provided:

## BASIC WARRANTY

"Ford Motor Company warrants to the owner each part of this vehicle to be free under normal use and service from defects in material and workmanship for a period of 24 months from the date of original retail delivery or first use, or until it has been driven for 24,000 miles, whichever comes first.

## POWER TRAIN WARRANTY

"In addition, Ford Motor Company further warrants to the owner each part of the engine block, head, and all internal engine parts, water pump, intake manifold, transmission case and all internal transmission parts, torque converter, drive shaft, universal joints, rear axle and differential, and rear wheel bearings of this vehicle to be free under normal use and service from defects in material and workmanship for a period of five (5) years from the date of original retail delivery or first use, or until it has been driven for fifty thousand (50,000) miles, whichever comes first.

## STEERING, SUSPENSION AND WHEEL WARRANTY

"In addition, Ford Motor Company further warrants to the owner each part of the suspension system, steering gear and linkage, power steering pump, road wheels, and front wheel bearings and seals of this vehicle to be free under normal use and service from defects in material and workmanship for a period of five (5) years from the date of original retail delivery or first use, or until it has been driven for fifty thousand (50,000) miles, whichever comes first.

"The further warranties do not include or apply to related items such as ignition, electrical, fuel, cooling, or brake systems, engine or transmission controls or linkages, steering column, clutch assembly, shock absorbers, or load leveling system.

## GENERAL WARRANTY PROVISIONS

"It is a condition of all the warranties that the owner maintain this vehicle according to the maintenance schedule set forth in the Customer Maintenance Record in the Maintenance section of this Owner's Manual. It is also a condition of all the warranties that, every twelve months, the owner furnish an authorized Ford or Lincoln-Mercury dealer with evidence that these maintenance services have been performed and obtain the dealer's written certification that he has received such evidence.

"All the warranties shall be fulfilled by the Selling Dealer (or if the owner is traveling or has become a resident of a different locality, by any authorized Ford or Lincoln-Mercury dealer) replacing with a genuine new Ford or Ford Authorized Reconditioned part, or repairing at his place of business, free of charge including related labor, any such defective part.

"None of the warranties shall apply to (i) tires or tubes (adjustments for them being provided by their manufacturers), or (ii) normal maintenance services (such as engine tune-up, fuel system cleaning and wheel and brake adjustments), or (iii) normal replacement of service items (such as filters, spark plugs, ignition points, wiper blades and brake linings), or (iv) deterioration, due to normal use or exposure, of soft trim, appearance items, hoses, belts or moulded rubber or rubber-like items.

"The warranties herein shall not apply to any vehicle normally operated outside of the United States, Puerto Rico, or Canada, except a vehicle ordered through an Exchange or Ship's Store of the U. S. or Canadian Armed Services. A vehicle normally operated in a country other than the United States, Puerto Rico or Canada will be provided the dealer's warranty authorized for that country. If an owner is temporarily traveling in other countries,

his U. S., Puerto Rican, or Canadian license plates or Certificate of Registration will identify him as a visiting owner entitled to the privileges of the U. S., Puerto Rican, or Canadian warranty.

"The warranties herein are expressly IN LIEU OF any other express or implied warranty, including any implied WARRANTY OF MERCHANTABILITY or FITNESS, and of any other obligation on the part of the Company or the Selling Dealer."

The trial court instructed the jury with reference to their duties, the opening statements and arguments of counsel, credibility of witnesses, circumstantial evidence, burden of proof, expert witnesses and sudden emergency. Then the court gave the following:

## INSTRUCTION No. 6

"Robert L. Reid and Billie Marie Reid claim damages from Ford Motor Company, and, therefore, have the burden of proving each of four essential propositions:

First, that they sustained damages;

Second, that there was a defect in the Lincoln automobile;

Third, that the defect existed at the time the automobile was delivered to the plaintiff;

Fourth, that the defeat in the automobile proximately caused their damages.

If Robert L. Reid and Billie Marie Reid failed to prove any one of these propositions, they would not be entitled to recover from defendants, Ford Motor Company."

## INSTRUCTION No. 7

"You are instructed that Ford Motor Company, at

the time of its sale of the Lincoln automobile involved in this cause of action to the plaintiffs, Robert L. Reid and Billie Marie Reid, warranted that the vehicle would be free, under normal use and service, from defects in material and workmanship for a period of twenty-four (24) months from the date of the original retail delivery or first use, or until it had been driven for 24,000 miles, whichever came first. If you find from a preponderance of the evidence that this warranty was breached by the defendant, Ford Motor Company, and that such breach of warranty resulted in damages to plaintiffs in this cause of action, you may then find for the plaintiffs in the amount of damages which you find they sustained by reason of the breach of warranty."

The other instructions dealt with proximate cause and damages.

Ford Motor Company's argument here on instruction No. 7 is as follows:

"While the express warranty provides that it is expressly in lieu of any other express or implied warranty, including any implied warranty of merchantability or fitness, and exclusion or modification of warranties is permitted by statute (Ark. Stat. Ann. 85-2-316 [2]), and this case does not involve injuries to a person, this is not the point that we are here making.

"In this facet of the case, the plaintiffs seek to use and rely upon an express warranty and part of that warranty spells out how it will be fulfilled. There is a contractual modification or limitation of remedy with respect to the express warranty and that is replacement of 'any such defective part'. At the most, this could not be more than the automobile which had cost $6,100.00.

"Ark. Stat. Ann. 85-2—719 provides that an agreement may limit or alter the measure of damages and

may limit the buyer's remedies to repair and replacement of non-conforming goods or parts.

"If the plaintiffs are going to rely and seek recovery under an express warranty, they should not be permitted to select certain parts of the whole and reject other parts."

In its reply brief Ford Motor Company stated the matter in this language:

"Since appellant is not here claiming exclusion, modification or limitation of the implied warranty of merchantability, there need be no concern with whether negation of limitation is unreasonable or unconscionable. But if there is to be a claim that any contract or clause is unconscionable, the parties are to be afforded an opportunity to present evidence in connection with the making of a determination. Ark. Stat. Ann. 85-2-302 (2). As long as consequential damages from breach of implied warranties are neither limited nor excluded, it is submitted that a limitation in an additional or 'bonus' express warranty is not unconscionable. But, in any event, there has been no factual determination of unconscionability as a basis for departing from the express terms of the express warranty."

The pertinent portions of the Uniform Commercial Code provide:

Ark. Stat. Ann. § 85-2-714 (3). "In a proper case any incidental and consequential damages under the next section may also be recovered."

Ark. Stat. Ann. § 85-2-715. "(1) Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach.

(2) Consequential damages resulting from the seller's breach include

(a) any loss resulting from general or particular requirements and needs of which the seller at the time contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and

(b) injury to person or property proximately resulting from any breach of warranty."

Ark. Stat. Ann. § 85-2-719. "(1) Subject to the provisions of subsections (2) and (3) of this section and of the preceding section on liquidation and limitation of damages,

(a) the agreement may provide for remedies in addition to or in substitution for those provided in this Article [chapter] and may limit or alter the measure of damages recoverable under this Article [chapter], as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of non-conforming goods or parts; and

(b) resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.

(2) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this Act.

(3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not."

Ark. Stat. Ann. § 85-2-316. "(1) Words or conduct

relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but subject to the provisions of this Article [chapter] on parol or extrinsic evidence (Section 2-202 [§ 85-2-202]) negation or limitation is inoperative to the extent that such construction is unreasonable."

When we read the second paragraph of the general warranty provisions under the guide lines of Ark. Stat. Ann. § 85-2-316 (1) that words "tending to negate or limit warranty" are to be construed whenever reasonable as consistent with each other but if the clauses are inconsistent then the words of disclaimer of express warranties must give way to the words creating the express warranty, we reach the conclusion that the mandatory language "all the warranties *shall* be fulfilled by the selling dealer. . ." is an instruction to the dealer and not a limitation on other remedies of the buyer. This construction is supported by Ark. Stat. Ann. § 85-2-719 (1) (b) which provides that "resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy."

There is no language anywhere in the warranty form "expressly" stating that the remedy of repair or replacement of defective parts is to be the exclusive remedy. The language in the fifth paragraph of the "General Warranty Provisions" goes only to "obligations" and "warranties," not to remedies. As Section 85-2-301 (Add. 1961), General Obligations of Parties, shows "The obligation of the seller is to transfer and deliver. . . . in accordance with the contract." Remedies are not "obligations," they are the rights arising from failure to perform obligations. This is further made clear by the provisions of Section 85-2-316 (4) cross referencing to contractual remedy section of the Code as governing those phases of the agreement. If the Ford Motor Company intended the repair remedy to be exclusive, as it now contends, it should have stated that intention in express language. Consequently it follows the Instruction § 7 was correct.

Ford Motor Company's complaint about Instruction No. 6 is that it did not limit liability to defects existing prior to the time the vehicle left Ford's control or to defects for which Ford had some manufacturing responsibility. This argument of course is premised upon the basis that Ford is not liable under the express warranty. As shown above, Ford is liable on its express warranty and it follows that this contention is without merit. By the very terms of the warranty it runs from the date of delivery to the purchaser.

It is also suggested that Instruction No. 6 is defective in that it did not limit the jury to a defective wiring condition in, under and about the front seat. We can find no prejudicial error here, because the pleadings and all of the proof had to do with a fire that started in the electrical wiring under the right front seat.

Ford also argues that the directed verdict in favor of Capps, the dealer, in the first trial also exonerated Ford. This argument, too, is premised upon the theory that Ford's liability could only be upon the basis of an implied warranty of fitness. As pointed out above, Ford's liability under the circumstances is that *under* its express warranty. That liability by its terms is independent of any liability of the dealer. It therefore follows that the exoneration of the dealer was in no way an adjudication of Ford's liability under its express warranty.

The appellees in their brief and the Amicus Curiae briefs have urged us to adopt the doctrine of strict liability as set out in Restatement of Torts 2d § 402A. Our disposition of this case under the Uniform Commercial Code makes it unnecessary to pass upon that argument.

Affirmed.