ELIZABETH V. COLLINS, GENERAL ADMINISTRATRIX AND ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF MARTIN L. COLLINS, DECEASED, PLAINTIFF-RESPONDENT, v. UNIROYAL, INC., DEFENDANTAPPELLANT.

Argued December 3, 1973—Decided February 4, 1974.

*Mr. Burtis W. Horner* argued the cause for defendant-appellant (*Messrs. Stryker, Tams and Dill,* attorneys).

*Mr. Michael H. Hochman* argued the cause for plaintiff-respondent (*Messrs. Miller, Hochman, Meyerson & Miller,* attorneys).

PER CURIAM. We affirm essentially for the reasons stated in the opinion of the Appellate Division, 126 *N. J. Super.* 401 (1973). However, we add the following to address the concept of our dissenting colleague that the adverse verdict on the strict liability count implies there was no defect in the tire and that where a tire is without defect it is not *prima facie* unconscionable for the manufacturer to limit his damages for breach of express warranty against a blowout to a replacement of the tire even where personal injuries or death ensue as a result of the breach.

1. The dissent does not dispute that *N. J. S. A.* 12A: 2–719(3) is applicable to claims for breach of express warranty. On the face of the statute, that section renders *prima facie* unconscionable a contractual limitation of damages in the case of consumer goods where the claim of damages per-

tains to injury to the person, as here. A cause of action for breach of express warranty, as the Legislature of course knew, does not depend upon a defect in the goods. Indeed, the affirmative establishment by the defendant of freedom from defect would be irrelevant in such an action. It therefore appears highly unlikely that the legislative declaration of *prima facie* unconscionability in the instance of contractual limitation of damages for personal injury was intended to be negated in a case of breach of express warranty merely because a defect in the product could not be established. We are clear that an issue of freedom from defect could not be injected by a defendant into an action for breach of express warranty for any purpose at all.

2. If the foregoing proposition is sound, and the question of defect consequently irrelevant on the issue of damages as well as that of liability in an action solely for breach of express warranty, it should be immaterial in this case that the plaintiff joined a count on strict tort liability in her complaint and that the jury found against her on that count (assuming, *arguendo,* that such a finding establishes freedom from defect in the product, as the dissent posits, rather than mere failure of plaintiff to carry her burden of persuasion on the strict liability count). Clearly the plaintiff should not stand in a worse posture for having joined a claim in strict liability than had she sued only on the express warranty.

3. Part of the rationale by which the dissent concludes that "the *prima facie* unconscionability contemplated by the Code has been overcome," and that unconscionability does not otherwise appear, is the thesis that defendant by its warranty, even as limited, gave plaintiff's decedent more than he was otherwise entitled to by law and that it would foster such offers by businessmen in the future to permit them to restrict consequential damages as in this case. We deem this position not consonant with the commercial and human realities.

A tire manufacturer warrants against blowouts in order to increase tire sales. Public advertising by defendant rela-

tive to these tires stated: "If it only saves your life once, it's a bargain." The seller should be held to realize that the purchaser of a tire buying it because so warranted is far more likely to have made the purchase decision in order to protect himself and the passengers in his car from death or personal injury in a blowout accident than to assure himself of a refund of the price of the tire in such an event. That being the natural reliance and the reasonable expectation of the purchaser flowing from the warranty, it appears to us patently unconscionable for the manufacturer to be permitted to limit his damages for a breach of warranty proximately resulting in the purchaser's death to a price refund or replacement of the tire. We consequently agree with the determination of the Appellate Division that the statutory presumption of unconscionability was not here overcome and that the trial court ruled correctly on the issue.

Judgment affirmed.

CLIFFORD, J. (dissenting). The essential question posed by this case comes down to this: whether, as a matter of law, a manufacturer can limit its liability where there is an express warranty that goes beyond a defect in the product, even though it could not benefit from such a limitation if the case were based upon defect alone. The Appellate Division's answer, accepted by the majority, is in the negative. I disagree. The response to that question should, it seems to me, be in the affirmative, particularly as a matter of statutory interpretation under the Uniform Commercial Code (hereinafter Code), enacted in New Jersey as N. J. S. A. 12A :1–101 et seq., L. 1961, c. 120, but also for reasons of sound business practice, to serve as an inducement to giving guarantees above the bare minimum which the law requires. I find in neither our statutory and case law nor in public policy any basis for denying to the manufacturer in the circumstances before us the right to hinge its giving of that "extra" guarantee upon the condition that the remedy for breach thereof be

limited to repair or replacement of the product or part of the purchase price.

Defendant, Uniroyal, Inc., issued a written guarantee with the sale of its tires to plaintiff's decedent. Parts of the guarantee are so basic and fundamental as to be merely an explication of the implied warranty of merchantability which the law imposes, regardless of any writing — this by virtue of the Code. See, *e. g., Newmark v. Gimbels, Inc.*, 54 *N. J.* 585 (1969). In addition, the guarantee contains language going beyond the standard of merchantability. Hence, it has been construed by both parties to this case and by all the courts which have examined it as an express warranty which the Code permits the parties to establish as part of the obligation, in the manner provided by N. J. S. A. 12A:2–313. The express warranty in parts here pertinent reads as follows:

ROAD HAZARD — In addition, every such U. S. Royal Master tire, when used in normal passenger car service, is guaranteed during the life of the original tread against blowouts, cuts, bruises, and similar injury rendering the tire unserviceable. Tires which are punctured or abused, by being run flat, improperly aligned, balanced, or inflated, cut by chains or obstructions on vehicle, damaged by fire, collision or vandalism, or by other means, and "seconds" are not subject to the road hazard provision of this Guarantee.

This "Road Hazard" guarantee undertook to give the consumer something more than that to which the law says he is entitled. At the same time the defendant sought to limit the damages which would flow from the breach of the warranty by agreeing to repair the tire or provide a new one if the tire was "eligible for adjustment" under the guarantee.[1] A chart indicated the percentage of the purchase price which the customer would have to pay depending upon the extent of the tire wear. The guarantee also contained, in italicized print, the following clause purporting to limit damages:

---

[1] N. J. S. A. 12A:2–316(1) specifically permits limitation of damages under an express warranty as long as the limitation is "reasonable."

*This Guarantee does not cover consequential damage, and the liability of the manufacturer is limited to repairing or replacing the tire in accordance with the stipulations contained in this Guarantee. No other guarantee or warranty, express or implied, is made.*

The guarantee was admitted into evidence but prior to summation the limitation clause was excised.[2] Defendant's counsel objected and argued that if the exhibit was to go to the jury, it should see the entire document. The trial judge disagreed, allowed the limitation clause to be deleted, and instructed the jurors to disregard testimonial references to the clause in their deliberations. It is in the interpretation of the law reflected in this ruling that I find error.

The majority upholds the trial court's excision of that limitation clause, agreeing with its view that the removal was mandated by N. J. S. A. 12A:2–719(3), reading as follows:

(3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.

Since I believe that on the facts of this case the prima facie unconscionability[3] for which the Code provides has been over-

---

[2] The circumstances surrounding its admission, or perhaps more accurately the conditions attached to it, are not entirely clear. When the trial court ruled the document, previously marked P–14 for identification, would be received in evidence, plaintiff's attorney remarked "14 provisionally pursuant to our prior conversation, your Honor," to which the court assented. Neither the "provisional" nature of the admission nor the prior conversation are otherwise referred to or explained.

[3] N. J. S. A. 12A:2–719(3) pertains only to personal injury "in the case of consumer goods." An interesting issue not argued below or to this Court is whether this tire was consumer goods to the decedent. N. J. S. A. 12A:9–109(1) states: "Goods are (1) 'consumer goods' if they are used or bought for use primarily for personal, family or household purposes." Thus, the classification is by use and not the nature of the goods. The use in this case appears to

come and the clause in question is not otherwise unconscionable, I reach a different result.

Central to my approach to the case and to my ultimate conclusion are what I understand the findings of fact by the jury to be. The trial court's charge focused on two theories of liability, namely, strict liability in tort and breach of express warranty as contained in the "Road Hazard" guarantee. The instructions would have allowed a verdict on either theory or on both. The trial judge required the jury to indicate the theory upon which it allowed any recovery; it rejected the strict liability in tort ground and rested the verdict of $125,000 on breach of warranty alone. It is noteworthy that none of the three experts who testified for the respective parties at trial could identify specifically the defect in the tire, or, unlike the situation in *Sabloff v. Yamaha Motor Co. Ltd.*, 59 *N. J.* 365 (1971), even suggest a possible defect which might have caused the blowout. Under these circumstances it seems clear that the jury found the tire to be free from defect and returned its verdict on the theory that there was a breach of the express warranty promising something more than freedom from defect.[4]

---

be an interesting hybrid since we are dealing with a family car which is used to transport the members of the family, all performers in the theatrical act, from job to job. Without a more complete record on this issue, not contemplated by the parties or the trial court, I am reluctant to deprive the plaintiff of the prima facie unconscionability of N. J. S. A. 12A:2–719(3) on the basis that consumer goods are not involved. However, proofs on the subject, such as the percentage business deduction which the consumer claims for the car on his federal income tax returns, might be illuminating should the question arise in a future case.

[4]The trial judge instructed the jury that strict liability in tort required the elements of a defect, the unreasonably dangerous character thereof, proximate cause and damages. The last two elements are, of course, necessary for a breach of express warranty verdict so it is certain that the jury found them here. However, it is theoretically possible that the jury found the product to be defective but not unreasonably dangerous and based their verdict on the absence of that element. But as a practical matter it strikes me that such an analysis of the jury's verdict is totally unrealistic on the facts of this case.

With that determination of "no defect" in mind, I turn next to a consideration of whether the *prima facie* unconscionability of N. J. S. A. 12A:2–719(3) has been overcome. The issue of unconscionability is one for resolution by the court as a matter of law, N. J. S. A. 12A:2–302(1). Obviously N. J. S. A. 12A:2–719(3) was not intended to rule unconscionable all limitations of consequential damages for injury to the person in case of consumer goods, in view of the Code language that such a limitation is only *prima facie* unconscionable. While the majority's observation that a cause of action for breach of express warranty does not depend upon a defect in the goods is of course true, it does not follow either in logic or in law that it is "therefore highly unlikely that the legislative declaration of *prima facie* unconscionability in the instance of contractual limitation of damages for personal injury was intended to be negated in a case of breach of express warranty merely because a defect in the product could not be established." At least it does not so follow in cases where, as here, the express warranty guarantees more than is required by law.

The drafters presumably had something in mind when they chose the expression "*prima facie* unconscionable" instead of "per se unconscionable" or simply "unconscionable" without any modifiers, as in *N. J. S. A.* 12A:2–309. My own research has not uncovered any precedential guidance on the proper interpretation of § 2–719(3) of the Code as to what is required to overcome the legislatively declared *prima facie* unconscionability where the product is free from defect, and I take it the majority's efforts to find authority in support of their attack on the theory here enunciated has like-

There appears to be no way that a defective tire which proximately causes a vehicular accident could not be unreasonably dangerous.

In so concluding I express no view on whether the requirement that a defect be unreasonably dangerous retains vitality in strict liability cases. That issue has not yet been considered by this Court. But see *Glass v. Ford Motor Co.*, 123 *N. J. Super.* 599 (Law Div. 1973). See also 5 *Seton Hall L. Rev.* 152 (1973).

wise been unavailing, they having cited none. Perhaps this is because the problem was never anticipated. The point, at the risk of belaboring it, is that something must be capable of negating that *prima facie* unconscionability, otherwise it would not be simply *"prima facie."* The Code, our legislature, the cases from other jurisdictions, our own case law, the commentators and text writers, the attorneys in this case, the trial court, the Appellate Division, and now the majority — all are silent on the quesion of what that "something" is.

Despite this vacuum in the state of the law, or perhaps precisely because of it, I think it not unreasonable nor inequitable nor contrary to the likely legislative intent to conclude that where the express warranty goes beyond what is required by the Code and the common law of this state, and where the product is found to be free from defect, the *prima facie* unconscionability contemplated by the Code has been overcome. I would so hold. I emphasize that I would limit this holding to the "extra" guarantee case and not expand it further, a significant premise of my approach seemingly overlooked or, worse, mistakenly perceived as inconsequential by the majority, there being no reference to it in the Court's opinion.

The establishment of the principle suggested here would not be in conflict with whatever case law there is under § 2–719(3) of the Uniform Commercial Code. While no defendant has yet overcome the *prima facie* unconscionability of that section, Summers & White, *Uniform Commercial Code,* § 12–12, p. 393, n. 195 (1972), there has yet to be a reported case in which the product causing the damages was free from defect. *Ford Motor Co. v. Tritt,* 244 *Ark.* 883, 430 *S. W.* 2d 778, 5 *UCC Rep. Serv.* 312 (Sup. Ct. 1968) (defective axle) ; *Ford Motor Co. v. Reid,* 250 *Ark.* 176, 465 *S. W.* 2d 80, 8 *UCC Rep. Serv.* 985 (Sup. Ct. 1971) (faulty wiring causing fire in automobile) ; *Walsh v. Ford Motor Co.,* 59 *Misc.* 2d 241, 298 *N. Y. S.* 2d 538, 6 *UCC Rep. Serv.* 56 (Sup. Ct. 1969) (defective throttle linkage).

Having determined that *prima facie* unconscionability has been overcome I would turn to the remaining issue of whether the clause might still be unconscionable under the circumstances. The question of what constitutes unconscionability generally is a difficult one at best. Summers and White remark that "neither the Code, the cases, nor the pages of this treatise offer a useful, operational definition on unconscionability." Summer & White, *Uniform Commercial Code*, § 4–4, pp. 116–17 (1972). The Official Comment sets out the following somewhat contradictory and less-than-helpful test:

> The basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract. Subsection (2) makes it clear that it is proper for the court to hear evidence upon these questions. The principle is one of the prevention of oppression and unfair surprise (Cf. *Campbell Soup Co. v. Wentz*, 172 *F.* 2d 80, 3rd Cir. 1948) and not of disturbance of allocation of risks because of superior bargaining power.

UCC § 2–302, Comment 1.

In *Kugler v. Romain*, 58 *N. J.* 522 (1971) Justice Francis described unconscionability as an "amorphous concept designed to establish a broad business ethic. * * * The intent of the [unconscionability] clause is not to erase the doctrine of freedom of contract, but to make realistic the assumption of the law that the agreement has resulted from real bargaining between parties who had freedom of choice and understanding and ability to negotiate in a meaningful fashion. * * * The standard of conduct contemplated * * * is good faith, honesty in fact and observance of fair dealing." 58 *N. J.* at 543–544.

One commentator has drawn a useful distinction between oppression in the bargaining process and the lack of a meaningful choice (procedural unconscionability) and overly harsh terms in the agreement (substantive unconscionability). Leff, "Unconscionability and the Code — The Emperor's New Clause," 115 *U. Pa. L. Rev.* 485 (1967). Most courts seem

to require a certain quantum of procedural unconscionability plus a certain quantum of substantive unconscionability to strike down a clause. See Summers & White, *Uniform Commercial Code,* § 4–7, p. 128 (1970) ; but *cf. Toker v. Westerman,* 113 *N. J. Super.* 452 (Cty. D. Ct. 1970). In *Williams v. Walker Thomas Furniture Co.,* 121 U. S. App. D. C. 315, 350 *F.* 2d 445, 2 *UCC Rep. Serv.* 955 (D. C. Cir. 1965) Judge J. Skelly Wright stated "Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." 350 *F.* 2d at 449. While a clause may be so substantively unconscionable as to require striking it down absent any showing of procedural unconscionability, such a case is the exception rather than the rule. See Spanogle, "Analyzing Unconscionability Problems," 117 *U. Pa. L. Rev.* 931, 943, 950 (1968).

While as indicated above the Code does not define the term unconscionability, it does provide some guidance on how to reach a determination in an unconscionability issue. *N. J. S. A.* 12A:2–302(2) states:

When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present *evidence as to its commercial setting, purpose and effect* to aid the court in making the determination. (emphasis supplied)

In order to determine whether the limitation of remedy clause here remains tainted by any unconscionability after the Code-imposed *prima facie* unconscionability has been resolved away, each of these factors must be carefully scrutinized as they relate to the facts in this case. My own examination of these factors leads me to find, as a matter of law, on this record, no unconscionability.

In addition to the fact that the written guarantee gave the customer more than that required to be given by statutory or case law, the limitation of remedy provision in the guaran-

tee was clearly written in language which a layman could easily comprehend. Rather than being hidden away, as in the case of the disclaimer clause in *Henningsen v. Bloomfield Motors*, 32 *N. J.* 358 (1960), the limitation clause was italicized and accompanied by a large chart indicating the percentage reimbursement. A reasonable man could not examine the guarantee without quickly concluding that the most being promised was a new tire.[5]

Tires suffer blowouts for reasons other than defects. See *Williams v. U. S. Royal*, 234 *La.* 510, 101 *So.* 2d 488 (Ct. App. 1958); *Shramek v. General Motors Corp.*, 69 *Ill. App.* 2d 72, 216 *N. E.* 2d 244 (App. Ct. 1966); *Halpern v. Jad Construction Corp.*, 19 *A. D.* 2d 875, 244 *N. Y. S.* 2d 147 (App. Div. 1st Dept. 1963), aff'd 15 *N. Y.* 2d 823, 257 *N. Y. S.* 2d 940 (Ct. App. 1965). The commercial purpose and effect of this clause was to enable the manufacturer to make this non-defect warranty above that imposed by law without opening wide the floodgate of claims. Uniroyal did this by precluding consequential damages in those cases where a failure such as a blowout resulted from causes other than defect or from certain enumerated instances of misuse. In other words, while the manufacturer remains liable for his defective workmanship in strict liability and under the implied warranty of merchantability, the clause provides he is not an insurer of the consumer.[6]

---

[5] N. J. S. A. 12A:2–316 does not require a limitation of an express warranty to be conspicuous. Compare the requirements of N. J. S. A. 12A:2–316(2) as regards implied warranty of merchantability and warranty of fitness for a particular purpose.

The limitation clause in "contrasting type" and the large chart indicating the percentage of reimbursement certainly attract attention and are conspicuous within the definition of that term in N. J. S. A. 12A:1–201(10).

[6] I use the term "defect" in the context of this opinion to signify both an element of the cause of action in strict liability and a failure of merchantability. At least one hornbook calls them "nearly synonymous." Summers & White, *Uniform Commercial Code*, § 9.7, p. 295 (1972). See also *Santor v. A & M Karagheusian, Inc.*, 44 *N. J.*

The effect of the clause is thus a laudable one. It makes it possible for the manufacturer to guarantee his goods to a degree which the law does not mandate. Conversely, the effect of the majority's holding this clause to be unconscionable today is to discourage manufacturers from guaranteeing anything but merchantability in New Jersey.

It is also important to make clear what my dissent does not stand for. The last sentence of the limitation clause here states: "No other guarantee or warranty, express or implied, is made." The implied warranty of merchantability is imposed on the seller as a matter of law — not as a matter of agreement as in express warranties — and constitutes the fundamental protection of the consumer under the Code. If it were argued that the clause limited consequential damages for breach of implied warranty of merchantability, I would hold that clause unconscionable and void as against public policy. Such a result would be dictated by *Henningsen v. Bloomfield Motors, Inc., supra.* The defendant admitted as much in its briefs and at oral argument before us, and as indicated heretofore the issue of implied warranty of merchantability was not litigated.

Likewise, I would have no difficulty holding a limitation clause of an express warranty unconscionable where the product is defective. In such a case the manufacturer would be liable for breaching his implied warranty of merchantability as discussed *supra.* It would be anomalous to say that an express warranty could limit the recovery which the plaintiff is entitled to under law on an implied warranty of merchantability, *N. J. S. A.* 12A:2–314. Indeed, that was exactly the tactic of the manufacturer in *Henningsen* to avoid responsibility for his defective product and this Court quite properly ruled the disclaimer void and against public policy. [At least one commentator has noted that the decision rested

52, 66–67 (1965), from which case the trial court took the definition of "defect" as "not reasonably fit for the ordinary purposes for which such articles are sold and used." The parties do not challenge this definition.

on the ground that the disclaimer was "a charter of irresponsibility which was *unconscionably* imposed by a noncompetitive industry," Lambert, "Justice Francis and Products Liability Law," 24 *Rutgers L. Rev.* 426, 433 (1970) (emphasis supplied).]

Further, I recognize that in a cause of action for strict liability in tort, any disclaimer or limitation of remedy or liability would be without effect. See *Santor v. A & M Karagheusian, Inc.,* 44 *N. J.* 52 (1965). The consumer in a defect case has an available remedy unencumbered by disclaimer or limitation of remedy problems.

Quite aside from Code considerations, permitting the manufacturer here to limit the remedy is a recognition of modern marketing conditions and of the growing arsenal of remedies available to consumers victimized by defective goods. I suggest that allowing a manufacturer to limit his liability in a "no defect" case will not run counter to the wholly desirable trend of both decisional and statutory law in favor of consumer protection, for the "strict liability in tort" doctrine is now well-entrenched and available for defective product cases. See *e. g., Jakubowski v. Minnesota Mining and Manufacturing,* 42 *N. J.* 177 (1964); *Rosenau v. City of New Brunswick & Gamon Meter Co.,* 51 *N. J.* 130 (1968); *Bexiga v. Havir Manufacturing Corp.,* 60 *N. J.* 402 (1972); *Corbin v. Camden Coca-Cola Bottling Co.,* 60 *N. J.* 425 (1972).

While the doctrine of strict liability in tort was little more than a glow on the horizon of modern judicial thought at the time the Code was originally drafted and submitted to the various states for examination, comment and revision, acceptance and adoption of the Code was relatively rapid while the judicial embrace of the revolutionary tort concept was much slower.[7] For an illuminating discussion of some

---

[7] The tire purchase in this case was made in 1966. By that year forty-eight jurisdictions had enacted the Code, including New Jersey where it became effective January 1, 1963 by virtue of N. J. S. A.

of the tensions arising from the "judicial creation of a common law doctrine of products liability which bypasses a recently enacted body of statutory law concerned with substantially the same field," see Rapson, "Products Liability Under Parallel Doctrines: Contrasts between the Uniform Commercial Code and Strict Liability in Tort," 19 *Rutgers L. Rev.* 692 (1965). But those tensions need not be confronted and resolved here; they are adverted to only as part of the background for the unique problem presented by this case.

Finally, there must be addressed one important practical problem in the approach suggested by this dissenting opinion, and that is how the trial judge should undertake to charge the jury and decide the questions of law peculiar to this type of case. Inasmuch as the resolution of the ultimate questions of law turns upon results reached by the trier of fact, I would, in a jury case involving issues such as those posed by the case at hand, require the trial judge to instruct the jury to return only a "special verdict in the form of a special written finding upon each issue of fact," as contemplated by *R.* 4:39–1. Only in that fashion could the question of *prima facie* unconscionability projected by § 2–719(3) of the Code — a question of law — be answered after (and depending upon) a jury finding on the question of "defect" — a question of fact. Upon receipt of that answer the trial judge would then resolve the remaining legal issue and mold the verdict depending upon what answers were given to the written questions.

For whatever bearing it has, I quite agree with the majority that "the plaintiff should not stand in a worse posture

---

12A:10–106. By that same year Dean Prosser reports that twenty-two courts had come to accept strict liability as to all products; in five states strict liability had been adopted by statute; and in six states it had not gone beyond food. Lambert, "Justice Francis and Products Liability Law," 24 *Rutgers L. Rev.*, 426, 430–431 (1970), citing Prosser, "Strict Liability to the Consumer in California," 18 *Hastings L. J.* 9, 14–15 (1966); see also Prosser, "The Fall of the Citadel (Strict Liability to the Consumer)," 50 *Minn. L. Rev.* 791 (1966).

for having joined a claim in strict liability than had she sued only on the express warranty;" but at the same time I have had to deal with this case as it has come to us. However, the principle developed herein would be just as applicable to a case containing a single count in express warranty, as I trust this suggested handling of the jury charge makes clear.

Inasmuch as there was, to my mind, a specific finding that there was no defect in the tire, I would, on appellate review, (1) declare the *prima facie* unconscionability imposed by § 2–719(3) of the Code overcome, (2) find the limitation of remedy clause not otherwise unconscionable, and thus (3) give effect to that clause by denying plaintiff the relief sought. Although I readily acknowledge that the questions I have discussed were not presented below with admirable precision, I nevertheless find them sufficiently exposed in the record to permit my reaching the conclusions enunciated herein. I would therefore reverse the judgment below and enter judgment for defendant.

*For affirmance* — Acting Chief Justice JACOBS, Justices HALL, SULLIVAN and PASHMAN and Judges CONFORD and COLLESTER—6.

*For reversal*—Justice CLIFFORD—1.