298 So.2d 26

**COURTESY FORD SALES, INC., a corp. and Ford Motor Company, a foreign corp.**

v.

**Mary Alice FARRIOR.**

**Civ. 276.**

Court of Civil Appeals of Alabama.

May 15, 1974.

Rehearing Denied June 19, 1974.

Truman Hobbs, Montgomery, for appellant Courtesy Ford Sales, Inc.

James W. Garrett, Jr., Montgomery, for appellant Ford Motor Co.

Philip H. Butler, Montgomery, for appellee.

BRADLEY, Judge.

This is an appeal from a judgment in favor of plaintiff in an action for breach of an express warranty. The action was filed against Ford Motor Company and Courtesy Ford Sales, Inc. as joint defendants and contained two counts. Count one alleged a breach of an express warranty and count two averred a breach of an implied warranty. Ford Motor Company, one of the defendants, demurred to the complaint as amended, which was overruled. Thereupon, both Ford Motor Company and Courtesy Ford filed pleas in short by consent to the amended complaint. Trial was commenced before the court and jury on the amended complaint. At the conclusion of plaintiff's case in chief, and on motion of Ford Motor, the court struck count two, the implied warranty count, as to both defendants. The trial continued on the basis of count one and was presented to the jury on the complaint containing only the express warranty count. The jury returned a verdict for plaintiff in the amount of $6,100.00, and judgment was entered accordingly. Motions for new trial were filed by both defendants and, among other grounds, contended that the verdict and judgment were excessive. The court ordered the motions overruled subject to acceptance by plaintiff of an $800.00 remittitur. This appeal is from the judgment on the merits and the motions for new trial.

The facts reveal that plaintiff, Mrs. Farrior, purchased a 1969 Ford Thunderbird from Courtesy Ford on August 15, 1969 for a stated price of $5,300. She received $1,800 as a trade-in allowance for her 1967 Pontiac.

Some three days after accepting delivery of the vehicle, Mrs. Farrior began experiencing difficulty with it. She said that trouble had developed in the electrical and ignition system and especially malfunctions in the electric motors in the windows. There was water leakage around both front doors, and the car was vibrating. She stated these problems were never satisfactorily solved by the dealer, Courtesy Ford. She also said that she continued to have other problems with the car which were never satisfactorily corrected.

Thirteen months after the purchase of the automobile, Mrs. Farrior and her attorney met with a representative of Ford Motor Company to discuss her problems with the Ford automobile. It was agreed that the repairs would be made at no cost to Mrs. Farrior. The car was at Courtesy Ford for ten days for repairs, and during said time Courtesy Ford furnished a car to Mrs. Farrior for her use without cost. About six months later, Mrs. Farrior had her car in for a minor repair. The following month the vehicle was carried to Courtesy Ford for a front-end alignment. There has been no charge made to Mrs. Farrior for any of the repairs made on her car either during the warranty period or after it had expired.

Mrs. Farrior also said that she had spent some $168 in repairs at service stations during the forty-four months she had owned the car. Finally she said that she had received a temporary warranty card, but did not receive the written warranty and owner's manual that usually accompany new cars.

An expert witness called by Mrs. Farrior testified that some of the problems troubling the vehicle could be attributed to normal wear and tear—the vehicle was over three years old—but he also said that there were certain conditions that could only be attributed to factory defects. The witness also testified that such defects if occurring in a brand new automobile would make it totally defective. He further stated that if you deducted the items caused by normal wear and tear, the car could be repaired for $665 assuming the worst. He did state, however, that the car's value was then $1,500 to $1,600.

Testimony given on behalf of appellants confirmed Mrs. Farrior's statement to the effect that she had not been charged for any of the repairs made on her vehicle by Courtesy Ford.

The service development manager for Ford Motor Company stated that he had authorized repairs to be made on Mrs. Farrior's car even after the expiration of the warranty period. He said that when a customer complains of problems with a vehicle after the expiration of the warranty period but which are related to complaints made during the warranty period, the repairs will be made as if they had occurred during said period. However, he did say that there was a point in time beyond which the company would not make cost-free repairs pursuant to the warranty.

The president of Courtesy Ford testified that there was a twenty-two month period during which Mrs. Farrior had no complaints with her car except for the two minor ones previously mentioned, and when Mrs. Farrior brought her car in seeking extensive repairs, he was told by Ford Motor that the repairs could not be handled under the warranty, and this answer was relayed to Mrs. Farrior.

Courtesy Ford argues several assignments of error, the first of which is the one contending that the record is devoid of any evidence showing that it is liable under the express warranty sued on by plaintiff. Courtesy Ford says that the general affirmative charge raising this point should have been given to the jury by the trial court, and the failure to do so constitutes reversible error. Courtesy Ford also says that since there is no evidence to support the allegation in the complaint that it was a party to the express written warranty issued by Ford Motor Company, a new trial on that basis should have been granted, and the failure of the trial court to award the motion constitutes reversible error.

The case was tried and considered by the jury on the basis of a one count complaint charging the defendants jointly with the violation of an express warranty. In support of this complaint, plaintiff introduced as Exhibit 8 the vehicle warranty issued by Ford Motor Company and placed in each of its 1969 motor vehicles. This written warranty is, in pertinent part, as follows:

"1969 MODEL CAR AND TWO-WHEEL DRIVE ·LIGHT TRUCK WARRANTY

"Ford * warrants to the first retail purchaser only of a 1969 North American Ford-built passenger car or standard two-wheel drive light truck that the Selling Dealer, at his place of business, and using new Ford parts or Ford Authorized Remanufactured parts, will repair or replace, free of charge including related labor, any of the following parts that are found to be defective in factory materials or workmanship in normal use and service in the United States, Canada, or Puerto Rico within a period of:

"12 months from the date of original retail delivery or 12,000 miles of operation, whichever occurs first, with respect to all parts (except tires and tubes);

"5 years from the date of original retail delivery or 50,000 miles of operation, whichever occurs first, with respect to the engine block and head, internal engine parts, water pump, intake manifold, transmission case, internal transmission parts, torque converter, drive shaft, universal joints, rear axle, and differential.

"If, on delivery to the first retail purchaser, the vehicle has been in Ford or Dealer service (such as a demonstrator) the time and mileage limitation shall begin with the date the vehicle was first placed in such service.

"In the event the Selling Dealer has ceased to do business, or the purchaser is traveling or has moved to a different locality, replacements or repairs may be made by any authorized dealer of Ford.

A vehicle normally operated in another country will be provided with warranty coverage authorized for that country.

"CONDITIONS

"1. Ownercard. Ford will furnish the purchaser with an Ownercard which must be presented to obtain warranty service.

"2. Usage. The warranty does not cover damage from accident, fire, or other casualty, misuse or racing, or deterioration of paint, bright metal, or soft trim from normal use or exposure.

"3. Odometer. This warranty will not apply to any vehicle on which the odometer has been altered so that the actual mileage of the vehicle cannot be determined.

"4. Required Maintenance. This warranty will not apply to the repair or replacement of any part caused by failure to perform the required maintenance services set forth in the 1969 Warranty Facts Booklet. These maintenance services are required because of normal wear and use and their cost is not covered by the warranty.

"5. Owner Responsibility. During the warranty periods, it may become necessary for the owner to:

"Replace spark plugs, ignition points and condenser, wiper blades, brake and clutch linings or pads, hoses, molded rubber or rubber-like items, and filters;

"Adjust carburetor, ignition, transmission bands, belts or brake or clutch systems;

"Clean fuel coolant, and brake systems, remove sludge or carbon deposits;

"Add oil, coolant, fluids and lubricants;

"Align headlights and front wheels, and balance wheels.

"Typically, these replacements and services are required because of normal wear and use, and are the owner's responsibility. Their cost will not be covered by the warranty, unless the original part is found to be defective in factory material or workmanship.

"Ford assumes no responsibility for loss of use of the vehicle, loss of time, inconvenience or other consequential expense. This warranty is expressly IN LIEU OF any other express or implied warranty, condition or guarantee on the vehicle or any part thereof, including any implied WARRANTY OF MERCHANTABILITY OR FITNESS, and of any other obligation on the part of Ford or the Selling Dealer.

" *'Ford' is Ford Motor Company for a vehicle purchased by the owner in the United States. 'Ford' is Ford Motor Company of Canada, Ltd., for a vehicle purchased in Canada."

Courtesy Ford argues that the one count complaint is a joint complaint charging both defendants, i. e., Ford Motor Company, the manufacturer, and Courtesy Ford Sales, Inc., the dealer, with a breach of the written warranty issued by Ford Motor Company, and for liability to be shown, there must be proof that Courtesy Ford was a party to the express warranty.

It is the rule in Alabama that where the parties to an allegedly joint contract are sued jointly thereon and the proof fails to support the said joint contract, a variance has occurred which is fatal to recovery, if properly raised. Jim Walter Corp. v. Gilbert, 47 Ala.App. 376, 255 So.2d 46; Redmond & Co. v. Louisville & N. R. Co., 154 Ala. 311, 45 So. 649; Thompson Chrysler-Plymouth, Inc. v. Myers, 48 Ala.App. 350, 264 So.2d 893.

Mrs. Farrior contends the variance was not properly raised, for that no objection was made to the introduction of Exhibit 8 on this ground, and cites this court to Rule 34, Rules of Practice in the Circuit and In-

"  .   .   .  Nor will the trial court be put in error for refusing the general charge predicated upon such variance, unless it appears from the record that the variance was brought to the attention of the said trial court by a proper objection to the evidence."

Courtesy Ford counters by saying that an objection to the reception into evidence of Exhibit 8 would have been self-defeating for that the express warranty clearly showed that Courtesy Ford was not a party to it.

■ Courtesy Ford's argument is not efficacious for that the express written warranty introduced into evidence was the main proof supporting the one count complaint alleging that both defendants were jointly liable for a breach of said warranty; therefore an objection to the introduction of the warranty on the ground that Courtesy Ford was not a party to it and hence the warranty would not support the allegation of joint liability under the complaint would clearly raise the variance between pleading and proof. If such objection be sustained, there would be a failure of proof of joint liability for the alleged breach of the express warranty; if the objection be overruled, the trial court had then been placed on notice of that party's contention that a variance between the pleading and proof existed.

In the instant case, no objection was made to the introduction into evidence of the express written warranty on the ground of a variance, and Rule 34 clearly provides that where no objection to the evidence is made on the basis of a variance, the trial court will not be placed in error for refusing to give the affirmative charge raising a variance between the pleading and proof. The following cases uphold this construction of the cited portion of Rule 34: Carter v. Shugarman, 197 Ala. 577, 73 So. 119; Kurn v. Counts, 247 Ala.

129, 22 So.2d 725; Alabama Equity Corp. v. Hall, 46 Ala.App. 143, 239 So.2d 215.

Therefore, we conclude that Courtesy Ford did not properly present the variance to the trial court and said court is not in error in refusing the written requested charge pointing out the variance.

However, Courtesy Ford also argues that there is an absence of proof to support the allegation that it was jointly liable on the warranty in question and this was pointed out, not only by a request for the affirmative charge on the basis of lack of proof, but also in its motion for new trial raising that same ground.

Exhibit 8 clearly shows that is was prepared by and issued by Ford Motor Company and has for its sole purpose the delineation of the liability of the manufacturer, Ford Motor Company. Some of the provisions of the warranty are as follows:

"Ford * warrants to the first retail purchaser  .   .   .   that the Selling Dealer,  .   .   .  will repair or replace, free of charge including related labor, any of the following parts that are found to be defective in factory materials or workmanship in normal use and service  .   .   .  within a period of:

"12 months from the date of original retail delivery or 12,000 miles of operation, whichever occurs first, with respect to all parts (except tires and tubes);

"5 years from the date of original retail delivery or 50,000 miles of operation, whichever occurs first, with respect to the engine block and head, internal engine parts, water pump, intake manifold, transmission case, internal transmission parts, torque converter, drive shaft, universal joints, rear axle, and differential.

.   .   .   .   .   .

"  .   .   .   This warranty is expressly IN LIEU OF any other express or implied warranty, condition or guarantee

on the vehicle or any part thereof, including any implied WARRANTY OF MERCHANTABILITY OR FITNESS, and of any other obligation on the part of Ford or the Selling Dealer."

The testimony shows that the defendant, Ford Motor Company, admitted that the warranty sued on was its warranty, and the only reference to the selling dealer in the warranty has to do with its making the repairs authorized by Ford and that the selling dealer cannot bind Ford with a contrary agreement. It will also be noted that the selling dealer is not the exclusive repairer of defects. Other dealers can make repairs under certain conditions.

The question then arises as to whether the dealer can be held liable for the guarantees of the manufacturer. We have been cited to no cases, nor have we found any, so holding. It has been decided, however, that unless a dealer specifically adopts the warranty of the manufacturer then he is not bound thereby. Cool v. Fighter, 239 Mich. 42, 214 N.W. 162; Pemberton v. Dean, 88 Minn. 60, 92 N.W. 478; Wallace v. McCampbell, 178 Tenn. 224, 156 S.W.2d 442; Cochran v. McDonald, 23 Wash.2d 348, 161 P.2d 305. There is no evidence that Courtesy Ford adopted the warranty sued on. Appellee argues that Courtesy Ford is bound by the warranty issued by Ford Motor Company and cites General Motors Corp. v. Earnest, 279 Ala. 299, 184 So.2d 811 as authority. In the *Earnest* case, the dealer admitted that he was liable under the manufacturer's warranty, but in the instant case, the dealer has steadfastly maintained that it was not liable under the manufacturer's warranty. Therefore, we do not perceive how *Earnest* could be apt authority for the contention that Courtesy Ford is bound by Ford Motor's warranty.

■ There being no adoption of Ford Motor's warranty by Courtesy Ford and an absence of proof that Courtesy Ford was a party to said warranty, we conclude that as a matter of law the trial court erred to re-

versal in not giving the affirmative charge for Courtesy Ford and in not granting to it a new trial on the same basis.

The judgment being reversed as to Courtesy Ford, what is Ford Motor's status on this appeal?

This court in Jim Walter Corp. v. Gilbert, *supra*, said:

"The action of the trial court in orally giving the general affirmative charge as to one of the defendants did not open any door to a judgment against the other. A joint cause of action was charged in the complaint. A joint cause of action was required to be proved. The defendants were liable jointly or not at all. A judgment could not be rendered against one and not the other. Gamble v. Kellum, 97 Ala. 677, 12 So. 82; Jones v. Engelhardt, 78 Ala. 505; Cobb v. Keith, Smith & Co., 110 Ala. 614, 18 So. 325; Haines v. Cunha, 217 Ala. 73, 114 So. 679; Air Engineers, Inc. v. Reese, 283 Ala. 355, 217 So.2d 66."

■ The judgment appealed from in the case at bar is joint and based on a joint cause of action which was not proved. Under our holding in the *Gilbert* case, Ford Motor and Courtesy Ford were liable jointly or not at all. Since Courtesy Ford was not liable, neither can Ford Motor be liable based on the allegations of the present complaint. A reversal as to Courtesy Ford causes a reversal as to Ford Motor. We would point out, however, that the new Rules of Civil Procedure, i. e., Rule 20, will in all probability eliminate future problems of this nature.

In addition to the issue just decided, the appellants raised questions concerning the measure of damages and the amount of damages, and since this case is to be reversed and remanded, a short discussion of this aspect of the case might be helpful should a new trial be undertaken. The trial judge charged the jury as follows:

" . . . [I]f you are reasonably satisfied from the evidence that the Defend-

ant or Defendants did breach a warranty to the Plaintiff in the sale of said automobile then in that event the only damages that Plaintiff would be entitled to recover would be limited to the difference at the time and place of acceptance between the value of the automobile accepted and the value it would have had if it had been as warranted, . . . ."

The above charge appears to reflect the generally accepted view of the proper measure of damages in breach of warranty cases. The Supreme Court of Alabama, in Columbia Motors Co. v. Williams, 209 Ala. 640, 96 So. 900, said:

"For breach of warranty in the sale of goods such damages are prima facie, in other words, in the absence of special circumstances, the difference between the value of the goods at the time of delivery and the value they would have had if they had answered to the warranty. . . . This may be shown by proof of the reasonable cost of putting the article sold in the condition called for by the warranty . . . ."

It should be pointed out that the concern of the court in the cited case was with the provision in the contract between the manufacturer and dealer providing that the cars sold to the dealer were to be new and in good merchantable condition. The breach of warranty consisted of a failure of the parts to be as warranted, causing the vehicles to be unsaleable and totally worthless.

The above rule is followed in other jurisdictions. Rose v. Chrysler Motors Corp., 212 Cal.App.2d 755, 28 Cal.Rptr. 185; Studebaker Corp. v. Nail, 82 Ga.App. 779, 62 S.E.2d 198; Fox v. R. D. McKay Motor Co., 188 Kan. 756, 366 P.2d 297; Morrow v. Barron, 229 Miss. 51, 90 So.2d 20; Dume v. Clydesdale Truck Sales Corp., 119 Misc. 590, 196 N.Y.S. 894; Nationwide Mutual Ins. Co. v. Don Allen Chevrolet Co., 253 N.C. 243, 116 S.E.2d 780.

The Uniform Commercial Code spells out the same measure of damages. Title 7(A), Sec. 2–714(2), Code of Alabama 1940, as Recompiled 1958, Cumulative Supp. 1966. The pertinent provisions of that section are as follows:

"(2) The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, . . . ."

Under the provisions of the warranty in the instant case, Ford Motor Company is obligated to repair or replace defective parts. (See Ford's warranty at page 11.)

In the case of Ford Motor Co. v. Reid, 250 Ark. 176, 465 S.W.2d 80, the Arkansas Supreme Court had before it a warranty providing as follows:

"BASIC WARRANTY

"Ford Motor Company warrants to the owner each part of this vehicle to be free under normal use and service from defects in material and workmanship for a period of 24 months from the date of original retail delivery or first use, or until it has been driven for 24,000 miles, whichever comes first.

"POWER TRAIN WARRANTY

"In addition, Ford Motor Company further warrants to the owner each part of the engine block, head, and all internal engine parts, water pump, intake manifold, transmission case and all internal transmission parts, torque converter, drive shaft, universal joints, rear axle and differential, and rear wheel bearings of this vehicle to be free under normal use and service from defects in material and workmanship for a period of five (5) years from the date of original retail delivery or first use, or until it has been driven for fifty thousand (50,000) miles, whichever comes first.

## "GENERAL WARRANTY PROVISIONS

"It is a condition of all the warranties that the owner maintain this vehicle according to the maintenance schedule set forth in the Customer Maintenance Record in the Maintenance section of this Owner's Manual. It is also a condition of all the warranties that, every twelve months, the owner furnish an authorized Ford or Lincoln-Mercury dealer with evidence that these maintenance services have been performed and obtain the dealer's written certification that he has received such evidence.

"All the warranties shall be fulfilled by the Selling Dealer (or if the owner is traveling or has become a resident of a different locality, by any authorized Ford or Lincoln-Mercury dealer) replacing with a genuine new Ford or Ford Authorized Reconditioned part, or repairing at his place of business, free of charge including related labor, any such defective part."

The question before the Arkansas Supreme Court was whether or not the express warranty set out above provided for an exclusive remedy limited to the repair or replacement of parts. It stated:

"There is no language anywhere in the warranty form 'expressly' stating that the remedy of repair or replacement of defective parts is to be the exclusive remedy. The language in the third paragraph of the 'General Warranty Provisions' goes only to 'obligations' and 'warranties,' not to remedies. . . . Remedies are not 'obligations,' they are the rights arising from failure to perform obligations. . . ."

In the case at bar Ford Motor Company expressly provided in its warranty that its only obligation was to replace or repair any defective parts on Mrs. Farrior's car. This is a different warranty provision than that contained in the *Reid* case, i. e., the *Reid* case warranty provided that all parts

of the car were free from defects, whereas in the instant case, the warranty goes only to the replacement or repair of defective parts.

The evidence is sufficiently adequate to support a jury finding that the defective parts were not repaired or replaced satisfactorily. Consequently, such finding would justify a conclusion that there had been a failure on the part of Ford Motor Company to perform the obligation of the warranty, i. e., repair or replace defective parts. The failure to perform the obligation would result in a breach of the warranty.

■ The measure of damages applicable to the breach of Ford Motor's warranty would be as set out in Section 2–714(2), *supra*. We therefore conclude that the trial court's charge on the measure of damages was appropriate in this instance.

Since this case is being remanded and a new trial may result, no discussion of the excessiveness of the damages question will be undertaken.

Reversed and remanded.

WRIGHT, P. J., and HOLMES, J., concur.