William Shramek, Plaintiff-Appellant, v. General Motors Corporation, Chevrolet Motor Division, a Corporation, and United States Rubber Company, a Corporation, Defendants-Appellees.

Gen. No. 50,614.

First District, Second Division.

March 15, 1966.

Rehearing denied April 5, 1966.

Lawrence Lawless, of Chicago, for appellant.

Baker, McKenzie & Hightower, of Chicago (Francis D. Morrissey, Thomas F. Bridgman and John W. Dondanville, of counsel), for appellee, General Motors Corporation; Chadwell, Keck, Kayser, Ruggles & McLaren, of Chicago (James E. Hastings and Richard E. Wiley, of counsel), for appellee, United States Rubber Company.

MR. JUSTICE LYONS delivered the opinion of the court.

This is an appeal, by plaintiff, from (1) an order entered on December 9, 1964, wherein the court entered a summary judgment in favor of defendant, United States Rubber Company, a corporation, and (2) an order entered February 18, 1965, wherein a motion to vacate the aforesaid summary judgment was denied, and wherein a summary judgment was entered in favor of defendant, General Motors Corporation, Chevrolet Motor Division, a corporation.

On October 20, 1961, plaintiff was riding in a 1961 Chevrolet with the automobile owner, one Glenn Northup, and the owner's wife. They were proceeding on Route 66 (a four-lane highway) at a speed of approximately 65 m. p. h., from the owner's home, to Las Vegas, Nevada, when the left rear tire blew out. The car left the highway, overturned, and all occupants, including plaintiff, were seriously injured. Plaintiff was thrown from the vehicle and sustained a concussion, hip and back injuries, a spondylolisthesis and other injuries. The occurrence took place near Barstow, California, and while plaintiff and the owner were hospitalized, the car was taken to a local junkyard and junked. Plaintiff and the owner examined the tire at the junkyard, but it was not preserved.

The automobile was purchased new by the owner on February 3, 1961 in the State of California. The automobile utilized tires of premium quality, manufactured by defendant, United States Rubber Company, and described as "U. S. Royal tubeless 8.00–14–4 ply." The

owner had paid an additional premium for these tires. The automobile carried an express warranty which, however, excluded tires.

Plaintiff, a cousin of the owner, had driven the automobile on brief occasions before the accident. Plaintiff, however, had not maintained the vehicle. It is uncontroverted that the automobile had been properly maintained and the tires properly inflated and rotated.

On September 27, 1963, plaintiff filed suit claiming a breach of implied warranty and, alternatively, negligence in the design and manufacture of the tire. Plaintiff alleged that the defective design or manufacture of said tire made both the tire and the automobile to which it was attached, dangerous instrumentalities. On August 18, 1962, plaintiff had notified both defendants of his claim, the serial number of the automobile, and a description of the tire.

Defendant, General Motors Corporation, Chevrolet Motor Division, in answer to amended interrogatories of plaintiff stated that the automobile in question was assembled on December 15, 1960 at Van Nuys, California; that defendant did not record any tire information except the size and color of the tires; that defendant had no information with reference to tire design, designed life, type of construction or complaints therein; and that defendant never received any notice or had any knowledge of defects in the tire design.

Defendant, United States Rubber Company, answering certain amended interrogatories of plaintiff stated that it had no knowledge concerning what tires were installed in the automobile described in the complaint, and that it had no information concerning lot descriptions or identifying characteristics which would allow the tracing of a tire to a specific plant or industry.

Both defendants moved for summary judgment, with attached affidavits, based upon the fact that the claimed defective tire was not available. A counteraffidavit

filed by plaintiff stated that Fortune magazine in December, 1964, carried an article entitled "After the Battle in United States Rubber's Executive Suite." Among other things, the article stated that in 1959 United States Rubber Company changed its tire composition to obtain a "soft ride"; that after this design change, tires so constructed suffered from separation of the inner plies, and failed by the thousands; and that it was not until the fall of 1961, that United States Rubber Company again "got control of quality." Summary judgment was granted defendant, United States Rubber Company, on December 9, 1964. Plaintiff moved to vacate the judgment within thirty (30) days, and during this period, defendant, General Motors Corporation, also moved for a hearing on its motion for summary judgment. On February 18, 1965, the court granted a summary judgment to defendant, General Motors Corporation and denied plaintiff's motion to vacate the summary judgment entered in favor of defendant, United States Rubber Company.

Plaintiff alleges that the trial court erred (1) in granting a summary judgment in favor of defendants in that the absence of the defective tire does not resolve all the factual questions in favor of a defendant and (2) in not allowing certain interrogatories to be answered by defendant, United States Rubber Company, before the court ruled on the summary judgment.

Both defendants argue that they were entitled to a summary judgment solely on the ground that in the absence of the tire, plaintiff could not sufficiently establish a factual question for the jury on either a breach of implied warranty or negligence theory. In addition, defendant, United States Rubber Company, argues that it did not have to answer certain interrogatories because (1) it did not keep records, (2) its design and manufacturing processes are secret, and (3) it did not have to disclose evidence of tire defects, for the type of tire

76

here involved, for a reasonable period before the occurrence.

█ █ The law in Illinois is clear that a summary judgment shall be entered in favor of the moving party if the pleadings, depositions, admissions and affidavits demonstrate that no genuine issue concerning any material fact exists and if the movant is entitled to a judgment as a matter of law. Furthermore, as stated in Allen v. Meyer, 14 Ill2d 284, 152 NE2d 576 (1958), on page 292:

> Summary judgment procedure is an important tool in the administration of justice. Its use in a proper case, wherein is presented no genuine issue as to any material fact, is to be encouraged. The benefits of summary judgment in a proper case inure not only to the litigants, in the saving of time and expenses, but to the community in avoiding congestion of trial calendars and the expenses of unnecessary trials.

We hold that the entry of a summary judgment was both proper and required in this case because the record conclusively demonstrates that plaintiff will not be able to prove, directly or inferentially essential elements of his case; i. e., (1) that the accident which resulted in his injuries was caused by a tire, (2) that said tire was defective. The trial court's conclusion that plaintiff could never meet his required burden of proof and that defendants were entitled to judgments as a matter of law was correct.

It would be incumbent upon plaintiff to prove the essential elements of his case by either direct or circumstantial evidence. The record shows that this would be an impossibility. Whether the charge is breach of implied warranty, negligence or the strict tort liability now recognized in both Illinois (Suvada v. White Motor Co., 32 Ill2d 612, 210 NE2d 182 (1965)) and California

(Greenman v. Yuba Power Products, Inc., 59 Cal2d 57, 377 P2d 897 (1963)), the cornerstone of plaintiff's cause of action is the existence of a defect in the tire at the time it left the control of the manufacturer or seller. Without this proof his case must fall.

■ Plaintiff admitted that he could not produce the tire and did not have any knowledge concerning its continued existence. Moreover, aside from a superficial inspection of the damaged car and tire after the accident by plaintiff and his cousin, the tire in question was never subjected to an examination which would reveal that the blowout was due to a preexisting defect. Thus, without any examination of the tire designed to elicit the cause of the blowout and without the tire itself or any hope or expectation for its recovery, plaintiff could never prove, directly or inferentially, a case of negligence, breach of warranty or strict liability.

■ The mere fact of a tire blowout does not demonstrate the manufacturer's negligence, nor tend to establish that the tire was defective. Blowouts can be attributed to myriad causes, including not only the care with which the tires are maintained, but the conditions of the roads over which they are driven and the happenstance striking of damaging objects.

A case directly in point is Williams v. U. S. Royal Tires, 101 So2d 488 (La App, 1958). There, plaintiff alleged that her husband had been killed in an automobile accident resulting from the blowout of a tire. As in the instant case, plaintiff charged both negligence and breach of warranty. Again, as in the present matter, plaintiff could not produce the tire and did not even know whether it still existed. Affirming the trial court's dismissal of the plaintiff's cause of action, the Appellate Court stated at page 492:

It cannot possibly be presumed or said that the blowing out of this tire was solely because of a

defect therein by the alleged manufacturer, defendant U. S. Royal Tires. There are numberless means of causes other than a defect in the manufacture, which bring about a blow out of a tire. It was the duty of the plaintiff in this case to allege wherein this tire was defective and to connect such condition to its negligent manufacture by defendant. U. S. Royal Tires. Plaintiff admitted upon a hearing in the lower court and in argument before this court that the tire could never be produced as it was not in their possession and as far as plaintiff knew, even in existence at the present time. Therefore, even if by any stretch of the imagination plaintiff's petition could be amended so as to state a cause of action, which would be treating the exception of defendants as one of vagueness, it is clear that plaintiff could never prove it.

. . . . . .

. . . It is true that manufacturers of automobile tires are under a duty to make them properly and carefully, but one charging a manufacturer with not doing so must allege wherein the manufacturer has failed and a causal connection with the accident. This counsel for plaintiff admits that he cannot do, nor could he prove such an allegation if made under his own admission in the lower court as well as in this court.

Similarly, in the instant case, the determination of why the tire blew out could be left only to pure speculation. The law is well settled that an inference of negligence or liability itself cannot be based on mere speculation or imagination, and where the evidence presented indicates only a mere possibility that a defendant was negligent, the case must be removed from the jury's consideration. Shaw v. Swift & Co., 351 Ill App

135, 114 NE2d 330 (1953); cf., Tiffin v. Great Atlantic & Pacific Tea Co., 18 Ill2d 48, 60, 162 NE2d 406 (1959).

■ Furthermore, a plaintiff also has the burden of establishing a causal relationship between the tire's alleged defect and his injuries. Walaite v. Chicago, R. I. & P. Ry. Co., 376 Ill 59, 33 NE2d 119 (1941); Drell v. American Nat. Bank & Trust Co., 57 Ill App2d 129, 207 NE2d 101 (1965); Gray v. Pflanz, 341 Ill App 527, 94 NE2d 693 (1950). Plaintiff did not, and could not, do this.

Plaintiff contends, however, that although he does not have the tire, nor any expert testimony as to the cause of its blowing out, he should be allowed to take his case to the jury. We disagree. On such a record, a jury would have no basis to determine whether the tire was defective when it left defendants' control and whether that defect ultimately caused plaintiff's injuries. Under such circumstances, it is manifest that plaintiff did not raise genuine issues of fact as to these material elements of his case.

■ The requirement that plaintiff prove the essential elements of his case has also been recognized in warranty cases. See, e. g., Stanton v. Sears Roebuck & Co., 312 Ill App 496, 38 NE2d 801 (1942); Paul Harris Furniture Co. v. Morse, 10 Ill2d 28, 139 NE2d 275 (1956); Haas v. Buick Motor Division of General Motors Corp., 20 Ill App2d 448, 156 NE2d 263 (1959). In the Haas case, the plaintiff's automobile, while still new and having been driven only 1,300 miles, caught fire while his wife was at the wheel. In affirming a directed verdict for the defendant on an alleged breach of warranty, the court held at page 454:

The mere fact that a fire evidently occurred here, resulting in damage to the property, does not authorize any presumption or inference that the defendant was responsible therefor,—the burden was

80

on the plaintiff to prove, among other things, that there was some material defect in materials or workmanship. . . . This is not a case for the application of some doctrine analogous to that of res ipsa loquitur. . . .

█ In Suvada v. White Motor Co., 32 Ill2d 612, 210 NE2d 182 (1965), in which the doctrine of strict tort liability for manufacturers was recognized in this State, the court made clear that such liability does not make the defendant "an absolute insurer." The court stated at page 623 that plaintiffs must still prove:

> . . . that their injury or damage resulted from a condition of the product, that the condition was an unreasonably dangerous one and that the condition existed at the time it left the manufacturer's control.

Thus, even in the expanded area of strict tort liability, it is still incumbent on plaintiff to prove, at the very least, that a defective condition in the manufactured item brought about the injuries which he incurred. Here, plaintiff obviously cannot prove that the nonexamined and nonexistent tire in question was "defectively manufactured."

█ Plaintiff contends that he can meet the required burden of proof by the use of circumstantial evidence. We disagree. First of all this is not a case which permits the application of the doctrine of res ipsa loquitur. Res Ipsa Loquitur, a name given to merely one type of circumstantial evidence, may be invoked where an agency or instrumentality, *under the exclusive control* of the defendant, injures an innocent plaintiff *under circumstances which ordinarily would not occur in the absence of negligence.* (Emphasis supplied.) Roberts v. City of Sterling, 22 Ill App2d 337, 161 NE2d 138 (1959). The tire, by plaintiff's own admission, had approximately

81

10,000 miles of use at the time of the accident and, for the purpose of circumstantial evidence, was thus not in either defendant's exclusive control or in their control at all. Moreover, as previously discussed, tire blowouts, in and of themselves, are not evidence of the presence of negligence or defect. Williams v. U. S. Royal Tires, 101 So2d 488 (La App, 1958).

Secondly, without the application of the res ipsa loquitur doctrine, no inference of liability can be drawn. The facts upon which plaintiff bases his case are a blowout and, essentially, nothing more. On such a record, especially when the tire had undergone some 10,000 miles of use and had never been examined for defects following the blowout, an inference that the manufacturer and seller placed a defective product in the plaintiff's hands is impossible.

 Plaintiff asserts, however, that had the trial court required U. S. Rubber to answer his interrogatories in full, sufficient evidence could have been elicited on which such an inference of negligence or liability could have been based. We disagree with plaintiff. The interrogatories which were objected to, had absolutely no relevance to the tire which allegedly failed. The inquiries referred, in general, to U. S. Royal Tires of a certain size and type. They sought to elicit information concerning the ordinary design life, the chemical composition, number of plies, type of tread and composition, the range of inflation pressures, and whether such tires had been the subject of any design defects or complaints relating to design. Answers to these interrogatories could not have provided evidence that the *tire in question* was defective. Accordingly, this defendant's objections to such interrogatories were properly sustained by the trial court.

Finally, plaintiff contends that he could have met the required burden of proof by the introduction into evidence of the magazine article, which appeared in Fortune

Magazine. We disagree with plaintiff. The introduction of the article would have been inadmissible, because of its incompetent nature. Plaintiff's argument that testimony by various agents of defendant, U. S. Rubber, who were mentioned in the article, would establish his cause of action, is likewise invalid, in that plaintiff cannot defeat a motion for summary judgment on a speculative theory that the testimony of his opponent might prove his case.

For the reasons herein set forth, the judgment is affirmed.

Judgment affirmed.

BRYANT, P. J. and BURKE, J., concur.