Pamela Householder, a Minor, by Her Father and Next Friend, Richard Householder, Plaintiff-Appellant, v. The Prudential Insurance Company, Defendant-Appellee.

Gen. No. 53,695.

First District, Fourth Division.

September 23, 1970.

STAMOS, P. J., dissenting.

Irving Tischer, of Chicago, for appellant.

Wildman, Harrold, Allen & Dixon, of Chicago (Harold W. Huff and Howard T. Brinton, of counsel), for appellee.

MR. JUSTICE DRUCKER delivered the opinion of the court.

Plaintiff appeals from a directed verdict entered in favor of defendant, The Prudential Insurance Company, at the close of plaintiff's evidence.

Plaintiff's second amended complaint contained two counts. Count I alleged that defendant, The Prudential Insurance Company, as owner and operator of an escalator on its premises "so carelessly and negligently operated its escalator so as to cause it to shake, jerk, make noises, and move in a 'bouncing' fashion, thereby causing the plaintiff's body to come into contact with the escalator" and that Prudential "was guilty of negligence in that it caused and allowed a part of said escalator to be in a sharp and dangerous condition so that

when said sharp portion of the escalator came in contact with the leg of the plaintiff, it caused a severe and permanent injury." Count II alleged that the Westinghouse Electric Corporation was guilty of carelessness and negligence in the design, manufacture, installation and maintenance of the escalator in the same manner as above set forth.

At trial there was testimony that on August 2, 1966, the plaintiff, who was two and one-half years old, visited the Prudential Building accompanied by her mother, father, twin brother, grandparents, and two aunts. Upon arrival at the building the family took the elevators to the fortieth floor. From there they took two banks of escalators to the top floor. They did not pay the admission fee to go out on the observation platform since they decided it would not be worthwhile. However, they did remain on the top floor for ten to fifteen minutes looking around and purchasing some souvenirs and postcards.

As the family started to leave, plaintiff and her mother proceeded first, followed by the grandparents and aunts and then Mr. Householder and plaintiff's twin brother. Mrs. Householder helped the plaintiff on the first escalator and together they rode down. At the bottom of the first down-escalator Mrs. Householder picked up the plaintiff by putting her hands on the calves of plaintiff's legs and lifting her up. Plaintiff and Mrs. Householder then mounted the second down-escalator. Plaintiff held Mrs. Householder's right hand and placed her other hand on the handrail. Just a moment before they were to step off, Mrs. Householder heard a "slight thump" and plaintiff's whimper. Mrs. Householder did not know where the sound came from. At about the same time she noticed a "little extra movement in the escalator, maybe a little jerk or something along with the thump . . . . It was just ever so slightly."

After reaching the bottom Mrs. Householder again reached down with her hands on plaintiff's legs to pick her up. She noticed there was a wetness on plaintiff's right leg and as she looked down she saw a cut. At no time while on the second down-escalator did plaintiff

crouch, fall, sit down, or tug at her mother's hand. After the "slight thump" plaintiff made no movement which Mrs. Householder observed or felt; she continued to stand erect down the second bank of escalators; and she did not start crying until Mrs. Householder touched her leg. Mrs. Householder did not observe plaintiff's leg before plaintiff got on the escalator while she was upstairs.

Plaintiff was taken to the hospital where approximately forty sutures were required to close the wound. The scar on the outside of plaintiff's right leg measures approximately four and one-half inches in length and one-half inch in width, although the width varies.

At the close of plaintiff's evidence both Prudential and Westinghouse moved for directed verdicts. After argument on the motions the trial court granted directed verdicts for both defendants. Plaintiff appeals only from the directed verdict granted in favor of Prudential.

Opinion

Plaintiff contends that she presented sufficient evidence of defendant's negligence to submit the case to the jury. She bases her contention on the testimony of Mrs. Householder, which she claims shows that her injury must have occurred on the escalator. Defendant argues that there was no showing of negligence on its part which caused "plaintiff's body to come into contact with the escalator."

In her second amended complaint plaintiff specifically alleged that a sharp portion of defendant's escalator came in contact with her leg causing a severe and permanent injury. However, at trial plaintiff presented no evidence which would identify "said sharp portion of the escalator," and she failed to proffer any evidence that a sharp portion of defendant's escalator actually came in contact with her leg causing the injury. Therefore, we must conclude that based on plaintiff's failure to introduce any evidence of "said sharp portion" there was nothing to submit to the jury on this allegation of defendant's negligence.

Plaintiff's second amended complaint also charged that the defendant "so carelessly and negligent-

ly operated its escalator so as to cause it to shake, jerk, make noises, and move in a 'bouncing' fashion, thereby causing the plaintiff's body to come into contact with the escalator." Plaintiff had the burden of proving these allegations. In Cobb v. Marshall Field & Co., 22 Ill App2d 143, 159, 159 NE2d 520, the court states:

> It was the plaintiffs' overall burden to establish the general or specific negligence of the defendant by a preponderance of the evidence. It was not enough for the plaintiffs to prove they were injured or that they were injured because of the negligence of someone. It was incumbent upon them to prove that the negligence of the defendant caused their injuries.

Mrs. Householder testified that just a moment before plaintiff and she were to step off of the second down-escalator she heard a "slight thump" and plaintiff's whimper. At about the same time she also noticed "a little extra movement in the escalator, maybe a little jerk or something along with the thump. . . . It was ever so slightly."

We believe that this testimony fails to prove the allegations set forth in plaintiff's second amended complaint. Mrs. Householder did not testify that the escalator shook or moved in a "bouncing fashion" nor did she know where the "slight thump" noise came from. Also, the "little extra movement . . . maybe a little jerk" was ever so slight. There was no explanation in evidence, medical or otherwise, as to how so slight a movement could possibly have caused an injury of the kind sustained by plaintiff.

Furthermore, there was no evidence to support plaintiff's claim that the alleged movement caused plaintiff's body to come into contact with the escalator. As the plaintiff and Mrs. Householder started down the second escalator plaintiff had her right hand on the railing of the escalator, with her left hand holding her mother's right hand. As they continued down the escalator at no time did the plaintiff crouch, fall, sit down, tug, or let go of her mother's hand. Plaintiff was right

beside her mother until Mrs. Householder reached down to take her off. Plaintiff stood erect down the second bank of escalators and made no movement that Mrs. Householder observed or felt. In fact, plaintiff did not start to cry until Mrs. Householder touched her leg.

We would also point out that Mr. Householder testified that his in-laws were behind his wife, but he could not observe them since he was still on the first down-escalator. He heard his wife scream as he was alighting therefrom and rode down the second escalator. The escalator was still functioning and he rode down as he would normally. He did not observe anything defective or wrong with the escalators. From his discussions with his in-laws and everyone else who had been there at the time of the alleged occurrence, no one, except his wife, indicated that they had observed or noticed anything unusual about the escalator or its operation.

In Tiffin v. Great A. & P. Tea Co., 18 Ill2d 48, 60, 162 NE2d 406, the court, in discussing the question of liability, states:

> Liability may not be based on imagination, speculation, or mere conjecture, and the question of its existence should be submitted for jury determination only where there is some direct evidence supporting each material allegation of the complaint or some circumstantial evidence from which inferences of such facts clearly preponderate.

See also Shramek v. General Motors Corp., Chevrolet Motor Division, 69 Ill App2d 72, 216 NE2d 244.

In the instant case, in view of the testimony and the photographic exhibits of the escalator, which by themselves show no defect, we must agree with the trial judge's statement that, "There is no showing by the testimony presented in plaintiff's case that in fact the escalator caused the injury in question to the plaintiff here." Therefore, we find that the trial court properly directed a verdict in favor of the defendant.

Plaintiff also argues that there was sufficient evidence to submit the case to the jury based on the doctrine of res ipsa loquitur. One of the requirements

which the plaintiff must prove before the res ipsa doctrine may be applied is that the instrumentality in question caused the injury. Shramek v. General Motors Corp., supra. However, as heretofore determined, there was no showing by the plaintiff that the escalator in fact caused her injury. Therefore, this is not a case which permits the application of the res ipsa doctrine.

Plaintiff next contends that the trial court erred in refusing to accept an offer of proof concerning a subsequent inspection of defendant's escalator by her father, Richard Householder. The offer of proof was "that he [Richard Householder] went back to the escalator at a subsequent date and at that time examined this escalator most closely and examined the leading edges of these stairs and found that they were sharp and that they were all about in the same condition."

The questioning of Mr. Householder on cross-examination by defendants' counsel concerned his inspection of the escalator on the day of the accident shortly after he returned from taking plaintiff to the hospital. Plaintiff's offer of proof, however, concerned Mr. Householder's inspection of the escalator at a "subsequent date." It did not give a specific date nor did it show that the condition of the stairs at the time of the alleged occurrence had remained unchanged in the interim.* We find no error in the court's refusal to admit the offer of proof. LaSalle Nat. Bank v. Feldman, 78 Ill App2d 363, 373, 223 NE2d 180, and Schwartz v. Peoples Gas Light & Coke Co., 35 Ill App2d 25, 181 NE2d 826.

The judgment is affirmed.

Affirmed.

ENGLISH, J., concurs.

STAMOS, P. J., dissents:

The majority opinion concludes that plaintiff failed to prove causation thereby precluding the application of

---

* It seems that the examination referred to in the offer of proof occurred on June 9, 1967, when pictures of the escalators were taken. This was ten months after the accident.

the doctrine of res ipsa loquitur. I cannot agree that plaintiff has failed to prove the matter of causation.

Mrs. Householder related in her testimony that she assisted plaintiff in embarking upon and disembarking from both escalators in the same manner, by placing one hand under plaintiff's calves. Neither in assisting plaintiff in embarkation of either escalator nor in disembarkation of the first escalator did Mrs. Householder notice any injury to plaintiff's leg. However, after disembarking the second escalator, Mrs. Householder immediately perceived plaintiff's injury. Therefore, the evidence substantiates plaintiff's claim of being injured during the second escalator ride.

The remaining issue then is whether the escalator itself or some other extrinsic force acted upon plaintiff to produce the injury. Mrs. Householder's only observation as to plaintiff's reactions during the second escalator ride was that plaintiff whimpered. However, Mrs. Householder did note that plaintiff's whimper, the erratic escalator movement and the thumping noise occurred simultaneously. It was shortly after these simultaneous happenings that Mrs. Householder discovered the injury upon again touching plaintiff's calf at the bottom of the escalator.

In view of these facts, I feel that the plaintiff has shown a causal relationship between the escalator's movements and her injury.

The majority places emphasis upon the fact that Mrs. Householder testified that the "jerk" of the escalator was "ever so slight." However, the operators of escalators must anticipate that their devices will be utilized by the infirmed, aged, handicapped and the very young, as well as the able bodied. The intensity of the "jerk" or abrupt movement of an escalator may be of little or no consequence or alarm to most riders, but in the case at bar a two and one-half year old child is the plaintiff.

The severity of the injury she sustained, requiring forty sutures, and the photograph of her injured leg reflect to a great measure what her mother described as a "little extra movement" and "jerk" that was "ever so slight."

The majority also emphasizes the fact that Mrs. Householder did not testify that the escalator moved in a "bouncy fashion" as alleged in the complaint. However, I fail to appreciate the merit in distinguishing a "bounce" from a "jerk" in resolution of the issues presented on appeal.

We also note that the majority states that the photographic exhibits of the escalator show no defect. However, the majority held, and I believe properly so, that the plaintiff's offer of proof as to Mr. Householder's inspection of the escalator at a subsequent date was properly refused. The photographic exhibits of the escalator were allegedly taken on the same date as Mr. Householder's subsequent inspection. Therefore, since the offer of proof was inadmissible for remoteness so is the use of the photographs to depict a defect or lack thereof. The photographic exhibits as admitted could be used for purposes of identification only.

Therefore, I feel that plaintiff presented sufficient evidence to apply the doctrine of res ipsa loquitur and believe that the trial court erred in directing a verdict for defendant. The judgment should be reversed and remanded for new trial.