2026 IL App (1st) 241210-U

No. 1-24-1210

First Division
March 9, 2026

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISCTRICT

_____

| | | |
|---|---|---|
| MAUREEN HEADINGTON, as Special Representative of the Estate of Vincent Headington, deceased, | ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 20 L 482 |
| TOYOTA MOTOR NORTH AMERICA, INC., TOYOTA MOTOR SALES, U.S.A., INC., TOYOTA MOTOR CORPORATION, TOYOTA MOTOR MANUFACTURING NORTH AMERICA, INC., OAKBROOK TOYOTA IN WESTMONT, and DAICEL CORPORATION, | ) ) ) ) ) ) ) ) | Honorable Anthony C. Swanagan Michael F. Otto |
| Defendants-Appellants. | ) | Judges, Presiding. |

_____

JUSTICE COBBS delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Howse concurred in the judgment.

**ORDER**

¶ 1     *Held*:   We affirm the trial court's grant of summary judgment in favor of defendants where plaintiff's proof of her negligence, product liability, and breach of warranty claims was merely speculative.

¶ 2     This action arises from an automobile accident in which the decedent, Vincent Headington, was involved while operating a leased 2017 Toyota Camry. Plaintiff-appellant, Maureen Headington, as Special Representative of the Estate of Vincent Headington, now appeals from the circuit court's order granting defendants' motion for summary judgment on plaintiff's negligence, products liability, breach of warranty, survival and wrongful death claims, as alleged in her second amended complaint pursuant to section 2-1005(c) of the Code of Civil Procedure (Code) (735 ILCS 5/2-1005(c) (West 2020)).

¶ 3     Plaintiff raises two contentions on appeal. First, she argues that the trial court erred in concluding that the evidence supporting her claims was speculative. Second, she argues that the court erred by failing to "vet" alleged misleading and/or false statements made by defendants, misconstruing her deposition testimony, and improperly accepted an incorrect inspection date for the damaged vehicle as fact.

¶ 4                                    I. BACKGROUND

¶ 5     The following factual summary is derived from the pleadings, depositions, and exhibits contained in the record.

¶ 6                                    A. Complaint

¶ 7     On January 10, 2020, Vincent Headington, through counsel, filed a 36-count complaint against multiple defendants allegedly involved with, *inter alia*, the design, manufacture, distribution, sale, leasing, and testing of Toyota motor cars. Following his death, a first amended complaint was filed, naming Maureen Headington, as Special Representative of the Estate of Vincent Headington and adding a wrongful death claim against all named defendants. The operative seventy-count, second amended complaint was filed on July 21, 2021, and names as defendants Toyota Motor North America, Inc. (TMNA), Toyota Motor Sales, U.S.A., Inc., Toyota

Motor Distributors, Inc., Toyota Motor Corporation, Toyota Motor Manufacturing, Kentucky, Inc., Toyota Motor Engineering & Manufacturing North America Inc., and Oakbrook Toyota in Westmont (collectively, "Toyota Defendants"). Additionally, the complaint named component manufacturers, including ZF TRW Automotive Holdings Corp., Autoliv, Inc., Takata Corporation, TK Holdings, Inc., Joyson Safety Systems, Daicel Corporation, and Nihon Plast Co., Ltd.

¶ 8    The complaint generally alleged that on March 6, 2018, Vincent Headington was operating a 2017 Toyota Camry XLE, which he had leased from an authorized Toyota dealership. While traveling eastbound on 63rd Street in Downers Grove, Illinois, a vehicle in front of Vincent came to an abrupt stop, causing Vincent to rear-end that vehicle while operating at a speed within the posted speed limits. The complaint alleged that, at the time of the collision, the vehicle was in the same essential condition as when it left the manufacturer's control. Further, the complaint alleged that during the collision, "all of the vehicle's airbag inflators exploded internally with excessive force and caused the metal canister housing the airbags to rupture." This rupture caused "sharp pieces of shrapnel and/or debris" to be forcibly expelled toward Vincent's leg and lower body, striking him and causing serious, permanent injuries.

¶ 9    Count I, asserted a claim of negligence against TMNA, alleging that TMNA owed plaintiff a duty of reasonable care to "design, select, inspect, test, assemble, equip, market, distribute, and/or sell the vehicle" so that it would provide a reasonable degree of occupant protection. The complaint alleged that TMNA breached this duty by, among other things: (1) failing to design the airbag control module "so as to prevent it from deploying and/or expelling shrapnel in foreseeable collisions"; (2) failing to design the module "so that it was properly vented and would adequately deflate under foreseeable impacts"; (3) "failing to adopt and implement adequate warnings

regarding the vehicle and its airbag control module"; and (4) failing to incorporate appropriate quality assurance procedures in the design of the vehicle.

¶ 10    Count II asserted a claim of product liability against TMNA, alleging that the vehicle was "unreasonably dangerous" and defective when it was placed into the stream of commerce. Specifically, plaintiff alleged that the vehicle and its airbag control module contained one or more conditions rendering it unsafe, including that it: (1) "failed by defectively manufacturing a safe and suitable vehicle and airbag control module causing it to malfunction during normal use"; (2) "failed by defectively designing a safe and suitable vehicle causing it to malfunction during normal use"; and (3) "failed to contain safety warnings on the vehicle and airbag control module alerting users that it could malfunction and cause injury." The complaint further alleged that the airbag control module "malfunctioned and exploded internally and with excessive force," causing shrapnel to expel toward Vincent.

¶ 11    Count III asserted a claim for breach of implied warranty against TMNA, alleging that TMNA impliedly warranted that the subject vehicle was merchantable and fit for its ordinary purpose as a safe passenger vehicle. Plaintiff alleged that TMNA breached this warranty because the vehicle was designed, manufactured, and sold with an "excessively energetic inflator which deployed with dangerously excessive explosive force and expelled shrapnel during air bag deployment."

¶ 12    Counts IV and V asserted claims under the Survival Act and for wrongful death based on the same underlying conduct alleged in Counts I through III. The remaining counts of the complaint re-alleged these same theories of liability against the other Toyota entities (Toyota Defendants) and the component manufacturers (ZF TRW Automotive Holdings Corp.; Autoliv,

Inc.; Takata Corporation; TK Holdings, Inc.; Joyson Safety Systems; Daicel Corporation; and Nihon Plast Co., Ltd.).[1]

¶ 13                                    B. Deposition Testimony

¶ 14                                    1. Maureen Headington

¶ 15     Plaintiff testified that she was not present in the vehicle at the time of the March 6, 2018, accident; her testimony regarding the crash was based on statements made to her by Vincent. According to plaintiff, Vincent was operating the leased Toyota Camry when a vehicle in front of him stopped abruptly, causing him to rear-end it. Vincent told her that he was traveling very slowly, approximately "5 to 10 miles per hour," at the time of impact. Vincent called her from the scene, stating that he had been involved in an accident, had contacted the police, and that, because the airbags had deployed and obstructed his visibility, he was unable to drive the car home, and that someone else would be bringing him home.

¶ 16     Plaintiff additionally testified that once Vincent arrived home, sometime after dinner she observed a 1.5-inch laceration on his shin. She stated that she did not know specifically what object caused the cut, but she assumed it was shrapnel or debris from the deployment. Vincent's leg injury later developed into a hole for which he received medical treatment. As a result of the injury, Vincent became sedentary, exacerbating his pre-existing conditions. The hole in his leg eventually healed with medication and after a stay at a specialized wound facility.

¶ 17     Several days after the accident, plaintiff accompanied Vincent to Collision Craft Auto Body Repair to retrieve personal items from the Toyota. While there, plaintiff believed Vincent took

---

[1] The following named defendants were voluntarily dismissed and are not a party to this appeal. Defendant ZF TRW (10/30/2020), defendant Nihon Plast Co., Ltd. (11/5/21), and defendants Joyson Safety Systems, Takata Corp, and TK Holdings, Inc. (4/18/22).

photographs of the vehicle because he thought it was "good to have evidence." On April 4, 2018, approximately one month after the accident, Vincent signed a document transferring title of the vehicle to the insurance company. Plaintiff admitted that neither she nor Vincent requested that Toyota inspect the car or asked the insurance company to preserve it for litigation prior to its destruction. She testified that they were never offered the opportunity to retain the car, and that, because Collision Craft deemed it irreparable, there was no basis to retain it. Plaintiff also testified that, because the vehicle was leased, she believed "Toyota owned it," and she therefore had no right or duty to prevent its sale.

¶ 18    On January 9, 2020, as she and Vincent were preparing to leave home, she heard a "crash of metal and glass" and subsequently discovered Vincent face down on the family room floor. Vincent was transported by ambulance to a hospital and died in the hospital 17 days later.

¶ 19                                        2. Eric Servatius

¶ 20    In his deposition, Officer Eric Servatius, a responding officer from the Downers Grove Police Department, testified that he did not witness the accident on March 6, 2018, but arrived at the scene to conduct an investigation. Based on his review of the scene and the driver's statements, he determined that Vincent rear-ended a vehicle that had stopped in traffic. Servatius concluded that the cause of the accident was Vincent's failure to reduce speed to avoid the collision. Servatius issued two citations, one for Vincent's failure to reduce his speed to avoid a crash and the other for driving with an expired license.

¶ 21    Regarding the specifics of the crash, Servatius testified that he did not perform an accident reconstruction or a speed analysis to determine the velocity of the vehicles at impact. Consequently, he offered no scientific opinion regarding the speed of the Camry. Regarding injuries, Servatius testified that Vincent reported no injuries at the scene and declined medical

treatment. Furthermore, Servatius observed no mechanical defects in the vehicle that would have contributed to the accident, and he did not recall any damage to the vehicle or the deployment of the airbags.

¶ 22                                3. Chester Kolacki

¶ 23    Kolacki testified as follows. He has been the manager of Collision Craft Auto Body Repair for 35 years. He is not an engineer, has no college degree, and possesses no specific training or certification regarding the design or manufacture of airbag systems. Kolacki testified that he has never downloaded data from an ACU and is not a certified Toyota technician.

¶ 24    According to Kolacki, the subject vehicle was brought to his shop shortly after the March 6, 2018, accident, and he prepared a repair estimate on March 16, 2018. Kolacki testified that upon inspecting the vehicle, he found it "odd" that all the airbags in the car exploded. He stated that his opinion was based solely on his visual observation and general experience, not on any scientific analysis or data regarding the vehicle's speed or crash pulse.

¶ 25    Significantly, Kolacki testified that he did not perform a mechanical inspection of the airbag system, did not remove the dashboard to examine the components, and did not measure the vehicle's frame for crush deformation. He acknowledged that, without the ACU data, he could not determine whether the vehicle's software commanded the deployment or whether it resulted from a malfunction. Regarding the preservation of the vehicle, Kolacki testified that the insurance company declared the vehicle a total loss. He confirmed that neither plaintiff nor the decedent asked him to preserve the vehicle for litigation; had they done so, he testified he would have kept it. Instead, the vehicle was released to the insurance company's salvage vendor in April 2018.

¶ 26                                4. Barry Hare

¶ 27    Barry Hare, defendants' expert, testified that he is the National Design and Technical Analysis Manager for TMNA, the group responsible for analyzing the safety and field performance of Toyota products. He stated that he had never inspected the subject vehicle because it had been destroyed prior to the commencement of litigation. Hare stated that the vehicle and its ACU are critical pieces of evidence in an airbag defect case. He explained that the ACU records a "wealth of information," including crash severity, change in velocity (delta v), and whether the software commanded deployment. Hare testified that without inspecting the vehicle and downloading this data, there is "no factual information available" to determine whether the airbag system functioned as designed or malfunctioned.

¶ 28    Regarding airbag deployment thresholds, Hare testified that the 2017 Camry is designed with a "no fire" threshold of 18 kilometers per hour (approximately 11 mph) and a "must fire" threshold of 24 kilometers per hour (approximately 15 mph) when impacting a fixed rigid barrier. He explained that impacts with movable objects, such as other vehicles, typically require higher speeds to trigger deployment. Although he could not inspect the vehicle, Hare reviewed photographs of the subject Camry and opined that the "significant damage" to the front structures was consistent with an impact force above the "no fire" threshold, contradicting the claim that the vehicle was traveling at only 5 to 10 miles per hour. Finally, Hare testified that there had been a recall of eight specific vehicles involving the passenger-side airbag bolt. The recall was unrelated to the driver-side airbag system at issue in this case.

¶ 29                    C. Motions to Preclude Evidence and for Summary Judgment

¶ 30    On August 31, 2023, defendants filed a motion to preclude evidence, as a discovery sanction pursuant to Illinois Supreme Court Rule 219(c) (eff. July 1, 2002), and a motion for summary judgment, pursuant to section 2-1005 of the Code (735 ILCS 2-1005(c) (West 2020)).

In the motion to preclude evidence, defendants sought to bar plaintiff from presenting any evidence regarding the condition of the subject vehicle's airbag system or the alleged defect. Defendants argued that plaintiff and the decedent anticipated litigation yet failed to preserve the vehicle, thereby allowing it to be sold and destroyed. Defendants contended this "spoliation" severely prejudiced their defense by depriving them of the opportunity to inspect the vehicle's physical components or download data from the ACU.

¶ 31     In the motion for summary judgment, defendants argued that plaintiff could not prove the essential elements of her strict liability and negligence claims, namely, the existence of a defect and proximate cause. Defendants asserted that without the vehicle or ACU data, plaintiff could not present direct evidence of a defect, nor could she rely on circumstantial evidence because she could not exclude reasonable alternative causes of the airbag deployment, including prior damage, aftermarket modifications, or crash dynamics. In support, defendants relied on the affidavit of their expert, Barry Hare.

¶ 32     Defendants further argued that the vehicle's unavailability deprived them of the opportunity to inspect the sensors, wiring, and airbag modules, that could affect deployment. They maintained that, without this evidence, any finding of defect would rest on impermissible speculation.

¶ 33     Defendants also addressed plaintiff's specific allegation regarding "shrapnel." They noted that plaintiff admitted in her deposition that she did not know what object cut Vincent's leg. Defendants argued that without the vehicle to identify the source of the alleged shrapnel, plaintiff could not prove that the injury was caused by a defect in the airbag system rather than debris from the collision or another object in the vehicle.

¶ 34    In her responses to both motions, plaintiff argued that sanctions and summary judgment were improper because she owed no duty to preserve the leased vehicle. Plaintiff asserted that legal title remained with Oakbrook Toyota, and that the salvage dealer, not the Headingtons, was required by the Illinois Vehicle Code to notify Oakbrook regarding the vehicle's destruction. Plaintiff further argued that she lacked the legal authority to prevent the sale and did not demonstrate a deliberate disregard for the court's authority because she took reasonable measures to find it prior to litigation.

¶ 35    Regarding the product liability claim, plaintiff argued that the vehicle's unavailability was not fatal because a defect could be proven by circumstantial evidence, including photographs taken by the decedent. She contended that she is not required to identify a specific defect to recover under strict liability. Finally, plaintiff asserted that defendants' claim of prejudice stemming from the unavailability of the vehicle and its electronic data does not warrant summary judgment, because defendants possess the same reports, photographs, and documentary materials available to plaintiff.

¶ 36    On November 3, 2023, defendants filed their reply, reiterating that plaintiff failed to present evidence of a product defect and that, in the absence of the physical vehicle or ACU data, plaintiff could not exclude reasonable secondary causes of the airbag deployment and is unable to present any factual basis to the court that would create a genuine issue of material fact or entitle her to judgment. They further contended that plaintiff's claims regarding the vehicle's speed were based on inadmissible hearsay and that Kolacki's testimony regarding the deployment lacked foundation because he was not an engineer and admitted that his opinion was based solely on visual observation without data.

¶ 37    Regarding spoliation, defendants maintained that plaintiff owed a duty to preserve the vehicle because she anticipated litigation, evidenced by the taking of photographs and her stated concerns. Defendants noted that the Headingtons permitted the vehicle to be destroyed without inspection, thereby prejudicing the defense. Finally, defendants argued that plaintiff failed to establish proximate cause because no competent evidence linked Vincent's injury to the airbag system, as opposed to other potential causes.

¶ 38    The court heard arguments on the motions and on January 18, 2024, issued a written order granting summary judgment in defendants' favor. In its ruling, the court stated that plaintiff could not prove a specific defect without the vehicle. Additionally, the court ruled that plaintiff could not prove a defect circumstantially because, due to the spoliation of the vehicle, she was unable to negate reasonable secondary causes for the airbag deployment. In light of its grant of summary judgment, the court deemed the motion to preclude evidence moot and denied it without prejudice.

¶ 39                                D. Motion to Reconsider

¶ 40    On February 16, 2024, plaintiff timely filed her motion for reconsideration. In the motion, plaintiff argued that genuine issues of material fact exist regarding whether the crash should have caused the airbags to deploy. Plaintiff asserted that under Illinois law, the unavailability of the product does not preclude a strict liability claim, as a defect can be proven through circumstantial evidence. Plaintiff pointed to Hare's deposition testimony, noting that the subject vehicle was the "same vintage" as other 2017 Camrys recalled for airbag malfunctions. Although the recall involved the failure of side airbags to deploy, plaintiff argued that this similarity, combined with Hare's testimony regarding deployment thresholds, creates a factual dispute. Specifically, plaintiff contended that because airbags are not designed to deploy at speeds under 11 mph into a fixed

barrier, their deployment in a low-speed collision with a movable barrier constitutes circumstantial evidence of a defect that a jury should weigh.

¶ 41    Regarding proximate cause, plaintiff argued that the trial court erred in granting summary judgment based on the timing of the discovery of Vincent's injury. She argued that the mere fact that the leg laceration was not discovered until Vincent returned home did not negate causation. She additionally argued that it is reasonable that Vincent would not have noticed the wound immediately at the scene. Consequently, plaintiff argued that her testimony regarding the injury created a genuine issue of material fact as to whether the airbag deployment caused the laceration that ultimately led to the decedent's death.

¶ 42    On April 9, 2024, defendants filed their response to plaintiff's motion to reconsider. They argued that no new facts or legal arguments were presented and that summary judgment was properly granted because plaintiff failed to present "even a scintilla of evidence" of a product defect. Defendants argued that it remained undisputed that neither plaintiff nor Vincent knew what caused the cut on his leg, and that this concession was expressly recognized in the circuit court's order. They emphasized that the injury was discovered hours after the accident, medical treatment was delayed, and Vincent's clothing was undamaged, all of which undermine any inference that the Camry's airbags caused the laceration. Moreover, because the Camry was not preserved, defendants remained steadfast in arguing that the alleged cause could not be examined and that any theory linking the cut to the airbags was speculative.

¶ 43    On May 14, 2024, the trial court entered an order denying plaintiff's motion to reconsider.

¶ 44    This timely appeal followed.[2]

---

[2] On August 8, 2024, we granted counsel for plaintiff's motion to withdraw. On September 9, 2024, Maureen Headington filed a docketing statement on her own behalf as the appellant.

¶ 45                                    II. ANALYSIS

¶ 46     Plaintiff raises two contentions on appeal. First, she argues that the trial court erred in concluding that the evidence supporting her claims was speculative. Second, she argues that the court erred by failing to "vet" alleged misleading and/or false statements made by defendants, misconstruing her deposition testimony, and improperly accepting an incorrect inspection date for the damaged vehicle as fact.

¶ 47     As a preliminary matter, we must consider whether plaintiff's brief complies with Illinois Supreme Court Rule 341 (eff. Oct. 1, 2020). Rule 341 governs the form and content of an appellate brief. *Voris v. Voris,* 2011 Ill App (1st) 103814, ¶ 8. Compliance with the court's rules is mandatory, and the fact that a party appears *pro se* does not excuse compliance. *Id*. In fact, our supreme court has approved standardized forms for an appellant's brief, which must be accepted in the appellate court.

¶ 48     We note initially that plaintiff, appearing *pro se*, has utilized our supreme court's approved form for an appellant's brief. In the section of the form designated "Points and Authorities," plaintiff states that the trial court made a mistake (1) by "[i]ssuing an Order for Summary Judgment stating that a jury would only find in Plaintiff's favor based on speculation but there is ample evidence in the depositions that refute this opinion," and (2) by "citing the following erroneous statement 'prepared from Mr. Kolacki's memory' as a basis for Order (material Plaintiff's case) yet statement is in direct conflict with Mr. Kolacki's sworn deposition on file with this case. Further misconstruing Defendant's testimony as to the causal of the laceration as opposed to the timing, which was known."

¶ 49     Consistent with the directions on the standardized form, in the "Points and Authorities" section of the form, plaintiff lists cases and identifies on which pages in the argument section of

the brief those cases will appear. However, in the argument section of the brief, there are literally no citations to any of the cases previously listed. Neither are there any citations to pages in the record in which the alleged conflicting statements may be found.

¶ 50    Here, plaintiff challenges the circuit court's order granting summary judgment in favor of defendants. However, she does not develop cognizable substantive arguments supported by relevant legal authority. Additionally, she makes allegations regarding specific defects in the presentation of the evidence without citation to the record.

¶ 51    Rule 341(h)(7) requires a brief to "contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). We have no obligation either to act as an advocate or to seek error in the record. *U.S. Bank v. Lindly*, 397 Ill App. 3d 437, 459 (2009). We admonish plaintiff that the reviewing court is not a repository into which the appellant may "foist the burden of argument and research." *Sciarrone v. Village of Island Lake*, 2025 IL App (2d) 240153, ¶ 11. Accordingly, this court may strike a brief and dismiss an appeal based on the failure to comply with the applicable rules of procedure. *Holzritcher v. Yorath*, 2013 IL App (1st) 110287, ¶ 77.

¶ 52    However, we recognize the severity of dismissal. Thus, only when the violation of the rule precludes or interferes with our review is dismissal of the appeal appropriate. *Ammar v. Schiller, Ducanto and Fleck, LLP.*, 2017 IL App (1st) 162931, ¶ 11. Notwithstanding plaintiff's noncompliance with the rule, as it is clear that plaintiff is challenging the entry of summary judgment and we have the benefit of the complete record, as well as appellee's brief, we choose to address the merits of the trial court's judgment. See *Twardowski v. Holiday Hospitality Franchising, Inc.*, 321 Ill. App. 3d 509, 511 (2001) (finding meaningful review was not precluded where the merits underlying the appeal could be readily ascertained from the record).

¶ 53                                    A. Summary Judgment

¶ 54    Summary judgment is proper where the pleadings, depositions, admissions, and affidavits, when construed most favorably to the non-movant, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 2-1005(c) (West 2020). In ruling on a motion for summary judgment, the trial court should construe the pleadings, affidavits, exhibits, and depositions most strictly against the moving party and most liberally in favor of the opponent. *Staton v. Amax Coal Co., Div. of Amax, Inc*. 122 Ill. App. 3d 631, 633 (1984). While a plaintiff need not fully prove their case at the summary judgment stage, they must nonetheless present sufficient facts to support the essential elements of their claim. *Keating v. 68th and Paxton, L.L.C.*, 401 Ill. App. 3d 456, 470 (2010). Although summary judgment is appropriate if a plaintiff cannot establish an element of his claim, it should only be granted when the right of the moving party is clear and free from doubt**.** *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004).

¶ 55    Turning to the standard of review, we note plaintiff's assertion that the applicable standard of review in this case is both manifest weight of evidence and *de novo.* Given that this appeal arises from the circuit court's grant of summary judgment, our review is *de novo. Sears, Roebuck & Company v. Acceptance Insurance Co.*, 342 Ill. App. 3d 167, 171 (2003). In *de novo* review, we are not limited to the trial court's reasoning but may instead affirm the judgment on any basis supported by the record. *Berglind v. Paintball Business Ass'n*, 402 Ill. App. 3d 76, 85 (2010).

¶ 56    We observe, in the first instance, that plaintiff's claims for wrongful death and survival are based on theories of negligence, products liability, and breach of warranty; the elements of proof for each, although well established, bear recitation here. In order to establish negligence, a plaintiff must show duty, breach, a resulting injury, and that the breach was the proximate cause of the

injury. *Miller v. Dvornik*, 149 Ill. App. 3d 883, 891 (1986). To prevail on a breach of implied warranty claim, the plaintiff must show not only that the item was defective, but that it was defective when it left the defendant's control. *Alvarez v. American Isuzu Motors*, 321 Ill. App. 3d 696, 703 (2001). Finally, to succeed on a product liability claim, the linchpin of plaintiff's claims, a plaintiff must demonstrate that the injury resulted from a condition of the product, that the condition of the product was unreasonably dangerous, and that the condition existed at the time the product left the manufacturer's control. *Brobbey v. Enterprise Leasing Co. of Chicago*, 404 Ill. App. 3d 420, 428 (2010).

¶ 57     In a products liability case, proof of these elements may be inferential and can be supported by either direct or circumstantial evidence. *Sanchez v. Firestone Tire & Rubber Co.*, 237 Ill. App. 3d 872, 873 (1992). However, to succeed in using circumstantial evidence, a party must either offer proof that excludes other potential causes or provide expert testimony confirming a product's defect. *Id.* at 874. A finding of liability cannot rest on mere speculation, guess, or conjecture; the evidence must support an inference that the defect was probable, not merely possible. *Id.* It is axiomatic that should plaintiff not meet her burden of proof on her products liability claim, she can prevail on none of her claims.

¶ 58     Plaintiff presents two major claims of error on appeal, one regarding the sufficiency of the evidence to defeat summary judgment and the other, essentially, on the caliber of her evidence. Defendants initially respond that plaintiff has forfeited her arguments on appeal regarding the cause of Vincent's injury and death because she failed to adequately raise those issues in her motion for reconsideration. *Bank of New York Mellon v. Rogers*, 2016 IL App (2d) 150712, ¶ 32 (issues not raised in the trial court are forfeited and may not be raised for the first time on appeal). On review, we find that the arguments presented in the motion for reconsideration, on plaintiff's

behalf below, and the arguments now raised by plaintiff here on appeal, although lacking in crystal clarity and precision, share sufficient similarities to defeat forfeiture. We therefore proceed to consider them.

¶ 59    On appeal, plaintiff first contends that summary judgment was improperly granted because the record contains sufficient evidence from which a jury could find in her favor without resorting to speculation. In support of her contention, plaintiff first argues that Toyota Motor Company did not prove that the vehicle needed to travel at the lower threshold of speed for the airbags to deploy, given that the accident involved another vehicle and not a solid barrier. She posits that given that the vehicle was moving slowly, the only explanation for the "extreme damage" to the interior of the vehicle, resulting in its total loss, was that a knee airbag on the driver's side or a loose bolt broke. Additionally, she argues that evidence presented by Toyota's expert witness confirms that the bolts from a knee bolster airbag can come loose as part of a national recall on 2017 Toyota Camrys. She maintains that conflicting evidence from Toyota's expert as to the number of vehicles affected is in direct opposition to the actual number, and "one can easily infer that Toyota was unaware of the full extent of the problem."

¶ 60    Defendants argue that expert testimony was required to establish defect and breach because airbag systems involve specialized and technical knowledge beyond the understanding of a lay jury. They assert that the plaintiff disclosed no expert witness on liability and relied solely on deposition testimony from witnesses who were not qualified as experts or who expressly stated that they could not determine whether a defect existed without inspection of the vehicle. Defendants emphasize that the only qualified witness (Hare) testified that he could not render an opinion regarding the defect absent the vehicle and its stored data.

¶ 61     We agree with defendants. Plaintiff presented no expert testimony regarding the speed of the vehicle at the time of the collision or the functionality of the airbags. The unrefuted testimony of Toyota's expert, Hare, was that damage to the exterior of the vehicle was inconsistent with the claimed rate of speed at the time of the collision. Further, plaintiff's claim of conflicting evidence regarding the recall misrepresents the record. Hare testified that the recall involved a passenger-side airbag bolt on only eight specific vehicles and was unrelated to the driver-side airbag system at issue in this case.

¶ 62     Even accepting that the bolts from a knee bolster airbag can come loose, plaintiff presented no evidence that such was the case here. Again, plaintiff presented no evidence, circumstantial or otherwise, to support a claim that the vehicle, or more specifically, the airbag system in the vehicle, was defective.

¶ 63     Plaintiff next argues that defendants attempted to use her failure to preserve the vehicle as the basis for dismissal, but failed to disclose that Toyota held ownership of the vehicle and that plaintiffs were only leasing it.

¶ 64     We glean from plaintiff's argument that she had no authority to retain possession of the vehicle following the accident and therefore should be excused from her inability to produce the same for inspection. Notably, no affidavits from plaintiff's insurer or from Toyota's leasing agent to support her claim are included in the record, and we are not persuaded that she was mandated to relinquish possession of the vehicle. Regardless, it remains the case that the vehicle was not produced either to support plaintiff's claims or to allow defendants to defend against them. *Graves v. Daley*, 172 Ill. App. 3d 35, 38 (1988) ("[t]he preservation of an allegedly defective product is of upmost importance in both proving and defending against a strict liability action"). Moreover, plaintiff's belief that she had no authority to retain possession of the vehicle is of no moment. Even

if a plaintiff takes no affirmative action to destroy evidence, the duty to preserve it rests with the plaintiff who knew or should have known that the evidence was material to a potential civil action. *Boyd v. Travelers Insurance Co.*, 166 Ill. 2d 188, 195 (1995).

¶ 65    Further, a plaintiff may not submit an issue to the jury where the verdict would rest on speculation or conjecture. *Rockett v. Chevrolet Motor Division, General Motors Corp.*, 31 Ill. App. 3d 217, 222 (1975). Plaintiff here seeks to have the jury infer that the airbags were improperly deployed and caused the cut on Vincent's leg. However, she has produced no competent evidence to support that conclusion. In fact, there may be multiple alternative explanations for Vincent's injury. Plaintiff has simply failed to demonstrate that her theory of causation is probable rather than merely possible. See *Salinas v. Chicago Park Dist.*, 189 Ill. App. 3d 55, 59 (1989) (where the nonexistence of the fact sought to be inferred is just as probable as its existence, any conclusion that the fact exists amounts to speculation, surmise, or conjecture, and the trier of fact may not properly draw such an inference).

¶ 66    Plaintiff's second contention on appeal is that the circuit court erred by not "vetting" the statements supporting defendants motion for summary judgment, as these statements were "misleading, misconstrued, and/or false." Specifically, she argues that (1) defendants mislead the court by stating that Kolacki, "the only expert to testify," prepared the estimate after the fact, (2) the court misconstrued her deposition testimony regarding what physically struck her husband, and (3) it could be inferred that the damaged upholstery resulted from the airbags deploying, thereby damaging "human skin."

¶ 67    We find each of plaintiff's arguments to be unsupported by the record. Clear from the record is that the trial court based its judgment on the fact that plaintiff failed to produce any competent evidence, circumstantial or otherwise, to support her theories of liability. "Any cause

of action for product liability based on an inference must still show that the damage resulted from a condition of the product." *American Family Insurance Co. v. Village Pontiac-GMC, Inc*., 223 Ill. App. 3d 624, 629 (1992).

¶ 68    In *Shramek v. General Motors Corp*., 69 Ill. App. 2d 72 (1966), a case decided six decades ago, this court affirmed summary judgment for the defendant manufacturer, where the plaintiff claimed that a tire blowout caused the vehicle in which he was riding to leave the highway and overturn. The tire was never subjected to an examination that would establish a pre-existing defect as the cause of the blowout. *Id*. at 78. The court held that, absent any examination of the tire to show the cause of the blowout, the plaintiff could not prove, either directly or inferentially, a case either of negligence, breach of warranty, or strict liability. *Id*.

¶ 69    We emphasize that in cases such as the one at bar, the alleged defective product is usually more instructive to a factfinder than either photographs or oral descriptions**.** *Shelbyville Mutual Insurance Co. v. Sunbeam Leisure Products Co*., 262 Ill. App. 3d 636, 642 (1994). Here, beyond plaintiff's own recollection of what occurred at the time of the collision, she has produced no competent evidence to support her claims. Without the vehicle, there is no way to determine whether the airbags were defective when the vehicle left defendants control, whether the condition of the airbags was unreasonably dangerous, or whether the deployment of the airbags caused Vincent's injury.

¶ 70    In sum, plaintiff's claims fail to survive summary judgment because the evidentiary record, even when viewed in the light most favorable to her, lacked a triable issue of material fact regarding the essential elements to prove either negligence, products liability, or breach of warranty. Thus, like the plaintiff's case in *Shramek*, plaintiff's case here must fail.

III. CONCLUSION

¶ 71    For the reasons stated, we affirm the judgment of the circuit court.

¶ 72    Affirmed.